### YUDELSON v. ANDREWS, Assistant Secretary of Treasury, et al.

Circuit Court of Appeals, Third Circuit.
March 3, 1928.

No. 3679.

**1. Intoxicating liquors ⬤⟞69—Federal Prohibition Commissioner has absolute discretion to refuse permit for industrial use of alcohol (National Prohibition Act, tit. 2, §§ 5, 6 [27 USCA §§ 14, 16]).**

Under National Prohibition Act, tit. 2, §§ 5, 6 (27 USCA §§ 14, 16), Federal Prohibition Commissioner has absolute discretion to refuse permit for use of denatured alcohol for manufacturing purposes, which is final and conclusive unless arbitrary or unsupported or wholly dependent on question of law, since duty to issue permit is not mere ministerial duty, but is quasi judicial.

**2. Intoxicating liquors ⬤⟞70—Prohibition Commissioner, at hearing on application to withdraw alcohol for industrial purposes, need not establish unfitness of applicant, and is not bound by evidence or hearer's recommendations (National Prohibition Act, tit. 2, §§ 5, 6 [27 USCA §§ 14, 16]).**

In proceedings under National Prohibition Act, tit. 2, §§ 5, 6 (27 USCA §§ 14, 16), to secure permit for withdrawing denatured alcohol for industrial purposes, Prohibition Commissioner is not required to establish testimony at hearing which affirmatively shows unfitness of applicant to receive the permit, and is not bound by evidence and the recommendations of the hearer, since purpose of hearing is to afford applicant opportunity to present his case, and hearing is merely advisory.

**3. Intoxicating liquors ⬤⟞71—Prohibition Commissioner need not give reasons for refusing permit to withdraw alcohol for industrial purposes, though omission thereof may cause reversal (National Prohibition Act, tit. 2, §§ 5, 6 [27 USCA §§ 14, 16]).**

Where, after hearing for permit to withdraw denatured alcohol for industrial purposes

under National Prohibition Act, tit. 2, §§ 5, 6 (27 USCA §§ 14, 16), Commissioner acts upon recommendation of hearer by refusing permit, he need not give reasons for his action, but failure to do so involves risk of reversal on account of absence of record supporting exercise of Commissioner's discretion.

**4. Intoxicating liquors ☞72—Review of Prohibition Commissioner's refusal of permit for industrial use of alcohol merely covers errors of law and determination whether decision was wholly unsupported or arbitrary (National Prohibition Act, tit. 2, §§ 5, 6 [27 USCA §§ 14, 16]).**

Review by suit in District Court of action of Prohibition Commissioner refusing application for permit to withdraw denatured alcohol for industrial purposes under National Prohibition Act, tit. 2, §§ 5, 6 (27 USCA §§ 14, 16), is not trial de novo, but merely determines whether Commissioner committed errors of law or whether decision was wholly unsupported or arbitrary.

**5. Intoxicating liquors ☞72—Court may affirm denial of permit for industrial use of alcohol, notwithstanding Commissioner's silence (National Prohibition Act, tit. 2, §§ 5, 6 [27 USCA §§ 14, 16]).**

District Court, on review of Prohibition Commissioner's denial of permit for use of alcohol for industrial purposes under National Prohibition Act, tit. 2, §§ 5, 6 (27 USCA §§ 14, 16), may affirm action of Commissioner notwithstanding Commissioner's failure to introduce testimony or give reasons for refusal, where applicant's case itself shows situation which would not justify grant of permit.

**6. Intoxicating liquors ☞72—Prohibition Commissioner's denial of permit to use alcohol in tobacco industry held sustained under applicant's evidence, notwithstanding Commissioner's failure to introduce testimony or give reasons (National Prohibition Act, tit. 2, §§ 5, 6 [27 USCA §§ 14, 16]).**

In suit for review of decision of Prohibition Commissioner under National Prohibition Act. tit. 2, §§ 5, 6 (27 USCA §§ 14, 16), refusing permit to withdraw alcohol for use for industrial purposes in curing, flavoring, and stripping tobacco, evidence presented by applicant at hearing *held* to sustain Commissioner's action, requiring affirmance, notwithstanding Commissioner's failure to introduce evidence at hearing and failure to state reasons for denial of permit.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit by Samuel Yudelson, trading as the Stanley Tobacco Company, against Lincoln C. Andrews, Assistant Secretary of the Treasury, Roy A. Haynes, Acting Prohibition Commissioner, and S. C. Wynne, Prohibition Administrator for Eastern Pennsylvania, to review the decision of defendant last named refusing a permit to withdraw denatured alcohol for industrial purposes. From a decree

dismissing the bill, plaintiff appeals. Affirmed.

Michael Scrody and Benjamin M. Golder, both of Philadelphia, Pa., for appellant.

Warren C. Graham, of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This appeal is from a decree of the District Court dismissing a bill, filed under section 6 of title 2 of the National Prohibition Act, 41 Stat. 305 (27 USCA § 16), for review of the action of the Federal Prohibition Administrator for Eastern Pennsylvania in refusing the plaintiff a permit to withdraw denatured alcohol to be used for industrial purposes. In view of the single question stated by the learned trial judge—"whether there has been any abuse of the exercise of a sound discretion by the permit authorities"—and in the light of his clear decision on that one question that there is "nothing to indicate that the refusal to issue this permit was not in the exercise of a sound discretion," we thought at first there is nothing in the case that requires discussion; yet the several questions raised and earnestly pressed by able counsel suggest that, at least in the minds of men who either operate under or administer the National Prohibition Act in this circuit, there is some uncertainty as to their rights and their duties and as to proper procedure. We are for this reason prompted to give this case more extended discussion than its facts warrant.

The situation out of which the appeal arose is briefly this: Yudelson, a dealer in tobacco, applied to the Federal Prohibition Administrator for Eastern Pennsylvania for a permit to withdraw 5,000 wine gallons of denatured alcohol of approved formula for each period of thirty days to be used by him for the non-beverage purpose of making a curing fluid, an article employed in the manufacture of scrap tobacco. The Administrator disapproved the application. A hearing followed at which the applicant introduced testimony in support of his application, but the Administrator, though represented by counsel, introduced no testimony. The Hearer made a report recommending that the application be disallowed, and in response thereto the Administrator formally refused a permit. The applicant, resorting to sections 6 and 5 of the Act (27 USCA §§ 14, 16), then filed a bill in the District Court for review of his decision, alleging that the evidence submitted at the hearing did not warrant the refusal of

the permit and that, accordingly, the action of the Administrator was arbitrary, illegal, wrongful and contrary to law and was an abuse of his power, and praying that the Administrator and other officials here associated with him as defendants be enjoined temporarily and perpetually from doing anything to interfere with his business and that the court reverse and set aside the order and direct the defendants to issue a permit as applied for. The applicant filed with his bill the record of the hearing and two newly made affidavits in further support of his application. The Administrator made no formal answer but filed an affidavit showing for the first time the grounds on which he had refused the permit. The District Court, making the finding quoted, dismissed the bill. The applicant then took this appeal.

The questions involved in this controversy are differently stated by the opposing parties. As the Administrator (to whom we shall refer as the Commissioner because of the reference to that official in the statute) refused the application without action at the hearing and without giving his grounds when he formally made the refusal, the aggrieved applicant, regarding his conduct as purely arbitrary, makes a statement of the question involved in this form:

"Is the Federal Prohibition Commissioner vested with absolute discretion to refuse a permit for the use of specially denatured alcohol in the manufacture of products, the formula for which has been approved by him, without any apparent cause or reason therefor?"

[1] We think this is not a correct statement of the precise question in issue. Yet, as it clearly reflects the attitude of this applicant for a permit and, doubtless, of other applicants, we shall discuss the question as framed.

These permit cases, as they are commonly called, are pregnant with difficulties because, involving permission to do a thing otherwise forbidden, they sometimes hover close to the line that divides right from wrong. In order correctly to explain the theory of permission to do things generally denounced by the National Prohibition Act as unlawful, it may be well to view the forbidden field before considering how one may be allowed to cross over it or pass around it.

A reading of the National Prohibition Act reveals that its one purpose is to stop the use of intoxicating liquor as a beverage. All of its provisions are devoted to ways and means to attain that end. They start by stopping supplies and shutting out every one.

Yet, though complete exclusion was thought desirable in order effectively to abate the practice at which the Act is directed, it was found that because of religious, medicinal and industrial considerations the exclusion cannot be wholly complete. Therefore the Act makes exceptions and provides for permission in special cases to manufacture, purchase, possess and use intoxicating liquor. It does not, however, vest in every one or, indeed, in any one, a right to purchase and use intoxicating liquor even in special circumstances unless that right be withheld by the prohibition authorities. The situation is just the reverse. The law provides that "no one shall manufacture, sell [or] purchase, * * * any liquor without first obtaining a permit * * * so to do." Section 6. Clearly, therefore, under the law no citizen of the United States has a vested right to purchase and use liquor even for lawful purposes and, correspondingly, no one has a vested right to obtain a permit therefor on his mere demand, for as we have said the dominant purpose of the Act is to prevent the use of intoxicating liquor as a beverage and its plain declaration is that all its provisions are to be liberally construed to that end. But the law does give every one a right to apply to the Commissioner of Internal Revenue for a permit to purchase and possess liquor for purposes recognized by the Act to be lawful, such as its use in manufacturing a flavoring or curing fluid necessary or desirable in the manufacture of tobacco products. When a permit is applied for in the form and pursuant to the regulations prescribed by the Commissioner with the approval of the Secretary of the Treasury relative to carrying out the provisions of the Act, there is imposed on the Commissioner, or his proper subordinate, not a mere ministerial duty to issue the permit as asked for but, on the contrary, a duty, quasi judicial, to consider and determine whether on the applicant's showing the permit to purchase should be issued. The Act "places upon him, as the administrative officer directly charged with the enforcement of the law, a responsibility in the matter of granting the privilege of dealing in liquor for nonbeverage purposes, which requires him to refuse a permit to one who is not a suitable person to be entrusted, in a relation of such confidence, with the possession of liquor susceptible of diversion to beverage uses." Ma-King v. Blair, 271 U. S. 479, 482, 46 S. Ct. 544, 70 L. Ed. 1046. The applicant must therefore show not a right to a permit but valid reasons for a grant of the privilege of a permit, among

which may be his fitness to handle liquor and his business need for liquor. He must, of course, present a situation which in all respects shows bona fides. Whether the applicant can be trusted properly to exercise the privilege conferred by a permit may depend on a variety of circumstances, as in this case on the quantity of liquor applied for in respect to the uses to which the applicant has represented his intentions to put it and the improbability that, if obtained, he will apply all of it to the lawful uses he has indicated. In order that the Commissioner may properly perform this important function in the scheme of preventing the use of liquor for unlawful purposes by regulating its use for lawful purposes, the Act gives him wide discretion. This, of course, means a sound discretion in the legal sense. In answer to the question the applicant has propounded, we hold that his discretion is absolute. Moreover, it "is final and conclusive and not subject to judicial review, at least unless the decision is wholly unsupported by the evidence, or is wholly dependent upon a question of law, or is seen to be clearly arbitrary or capricious." Ma-King v. Blair, supra; Silberschein v. United States, 266 U. S. 221, 225, 45 S. Ct. 69, 69 L. Ed. 256.

Knowing human infirmities and realizing that absolute power thus granted might be abused, the Congress through regulations of the Bureau of Internal Revenue has given an applicant a right to a hearing following a refusal of his application (as held by the District Court of the United States for the Eastern District of Pennsylvania, not here questioned and therefore not now adjudged), and, by express provision of the statute, a right of review by a District Court. It is important to pause and note the exact legal characters of these two proceedings.

[2, 3] At the hearing before a person called a Hearer, the applicant may appear and present evidence to sustain his application and the Commissioner may or may not appear and may produce or not produce evidence in opposition, just as he may choose. Thus we answer the first question propounded by the Government, that it is not "incumbent" on the Commissioner to establish by testimony before the Hearer facts showing affirmatively the unfitness of the applicant to receive a permit. It might be wise, indeed it might be necessary, to do so, unless the Commissioner. sees fit to run the risk of which we shall presently speak. But, for the moment, that is his affair. The hearing is not a trial. It is a proceeding intended to afford the applicant an opportunity further to present his case and to afford the Commissioner opportunity to be further advised of the situation. The result is not a judgment but a recommendation by the Hearer to the Commissioner that he grant or refuse the application. His recommendation is in no sense binding on the Commissioner. Rather it is like an issue submitted by a court of chancery to a court of law for trial by a jury where the jury's verdict operates merely to inform the conscience of the chancellor and is not binding on him. When, as in this case, the Commissioner acts upon the recommendation of the Hearer by refusing the permit, he may then give or omit giving his reasons for his action, just as he may see fit. If he produce no testimony at the hearing and give no reason for his refusal when subsequently made, he runs a risk to which we shall advert presently. As the hearing is not a contest between applicant and Commissioner, the Commissioner is not bound by the evidence produced by the applicant. He may accept or reject it, in whole or in part. He may also be validly influenced in his judgment of refusal by matters aliunde which establish to his satisfaction that the application for a permit to withdraw alcohol has not been made in good faith. Thus we answer the Commissioner's second question, with the qualification, however, that, if he acts secretively and in silence, he does it at his peril.

When the Commissioner (or Administrator) has on the recommendation of the Hearer refused an application for a permit, the Act steps in and by express provision of Section 6 affords the applicant a review before a court of equity in the manner provided by Section 5. A review of what? Not of the hearing, nor of the Hearer's recommendation, but of "the action of the Commissioner." It is a review of "his decision." His decision is the refusal of the application. [4] In respect to the character of such a review, whether it be a proceeding de novo, or a review of the decision as rendered first by the Hearer and last by the Commissioner, or of both, there was at the beginning of the administration of the National Prohibition Act much confusion in judicial thought and action. All this, happily, has been set at rest by the Supreme Court in the Ma-King Case, supra, from which we gather that the review is solely of the Commissioner's action and that it is not a hearing de novo or even a hearing supplemental to the action of the Commissioner whereby additional evidence, oral or by affidavit, may be introduced to show that the Commissioner was right or wrong or to determine finally that the ap-

plicant should have a permit. The character and extent of the review is definitely stated by the Supreme Court in these words:

"On the other hand, it is clear that Congress, in providing that an adverse decision of the Commissioner might be reviewed in a court of equity, did not undertake to vest in the court the administrative function of determining whether or not the permit should be granted; but that this provision is to be construed, in the light of the well established rule in analogous cases, as merely giving the court authority to determine whether, upon the facts and law, the action of the Commissioner is based upon an error of law, or is wholly unsupported by the evidence or clearly arbitrary or capricious," citing Silberschein v. United States, supra, the law of which we have already quoted with reference to the character of the discretion reposed in the Commissioner.

[5] On such a review, with power under the statute to "affirm, modify or reverse" the action of the Commissioner, it is manifest there must be something before the court to review. This of course should be the record below. That record may in part consist of the testimony before the Hearer but in addition it must certainly contain the action of the Commissioner—the subject-matter of the review. If his action consists of nothing beyond a flat refusal of the application—the grounds for his action being nowhere shown —the court may, when opposed by a favorable showing on the part of the applicant, regard the Commissioner's action as unsupported by evidence and therefore arbitrary. This is a risk the Commissioner runs if throughout the proceeding he acts in silence, for manifestly when the law reposes in him great power to be wielded through the exercise of his discretion and then affords a review of his action thus exercised, it contemplates that he should in some way give the reviewing tribunal some grounds on which to rest a judgment that he has not abused his discretion and that his decision is not arbitrary. He must somehow supply the court with a record of what he did and why he did it. Without being informed of the reasons for the Commissioner's action, a reviewing court cannot perform the function which the statute has placed upon it of affirming, modifying or reversing what he has done. If he stands mute throughout and supplies the court with no grounds for his action—that is, no evidence of a proper exercise of his discretion—then the court will be driven to the applicant's case as made in the record. In such a situation the court may, on the appli-

cant's case alone, find an abuse of discretion and reverse the Commissioner; or, if the applicant's case itself shows a situation which would not justify the grant of a permit, the court may, notwithstanding the Commissioner's silence, affirm his action. And to precisely that point we now come on the merits of the case at bar.

[6] Disregarding the applicant's two affidavits and the Commissioner's one affidavit filed in the District Court as matters originally introduced there and hence no part of the record taken up for review, we look to the record as it validly exists to find whether it supports the Commissioner's administrative order denying the application for a permit and supports the court's judicial decree sustaining his action, within the rule affecting each as laid down in the Ma-King Case. The record consists of the bill of review and accompanying exhibits including the application for a permit and certain business letters; the Commissioner's first disapproval of the application "for the reason that (the applicant was) unable to furnish sufficient evidence to warrant approval of same"; the testimony taken at the hearing; the report of the Hearer, containing findings from the evidence that at no time prior to filing his application had the applicant used alcohol in curing tobacco; that there is no evidence of the necessity for its use for that purpose or any purpose connected with his business and that there is no evidence to indicate in just what way, if at all, the product of the applicant would be improved by its use. The Hearer might also have referred to the testimony of the applicant that although he had never used alcohol in curing, flavoring and stripping tobacco, he intended to use it for that purpose on an estimated output of around 150 cases a month, each case containing not more than 350 pounds, and that, as a matter of common observation, a monthly withdrawal of 5,000 wine gallons of denatured alcohol for such a purpose is greatly in excess of its possible use in spraying and curing the hoped for or expected monthly output of tobacco. The Hearer concludes his report with a finding that the applicant failed to meet the burden of establishing a right to a permit to use alcohol for the industrial purpose named and recommended its disapproval. There followed an approval of the recommendation by the legal advisor of the Commissioner and the Commissioner's concurrence with the Hearer's recommendation.

We are of opinion that the case as made by the applicant himself contains evidence

of lack of business need for alcohol in the quantities he demanded, that the great disparity between what he asked for and what on his own showing would be used in his expected business raised such a doubt as to the lawful use to which the remainder might be put as to justify the Commissioner in finding against the application. Therefore, notwithstanding what in ordinary cases would be dangerous silence of the Commissioner, the applicant has by his own showing supplied enough evidence to support the Commissioner's finding against him and enough to sustain the decree of the District Court that the Commissioner did not abuse his discretion.

The District Court entered a decree dismissing the bill of review. This was in effect an affirmance of the Commissioner's order refusing the permit. As it was in accord with the authority conferred on the court by section 5 of the Act, namely: to "affirm, modify, or reverse the finding of the Commissioner," it conformed to the law, and the question, academic in this case, as to what kind of order should be made in another case where a District Court finds against the Administrator does not call for decision.

The decree is affirmed.