**DORAN, Prohibition Com'r, et al. v. EISENBERG.**

Circuit Court of Appeals, Third Circuit.
January 21, 1929.

No. 3951.

George W. Coles, U. S. Atty., Warren C. Graham, and Richard H. Woolsey, all of Philadelphia, Pa., for appellants.

N. S. Winnet, B. I. De Young, and P. J. Friel, all of Philadelphia, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and KIRKPATRICK, District Judge.

WOOLLEY, Circuit Judge. Louis E. Eisenberg, trading as Columbia Barber Supply Company, applied for a permit to withdraw 750 gallons of specially denatured alcohol every thirty days for use in the manufacture of toilet waters under the terms of the National Prohibition Act. The Prohibition Administrator refused the application. This was followed by a hearing at which the Hearer, on his finding of facts, recommended that the permit be denied. Again the Administrator refused the application. The applicant then filed in the District Court a bill for review of the Administrator's decision. After argument the court referred the case back for further development of the facts at a rehearing. At the second hearing the Hearer uncovered few, if any, additional facts and renewed his recommendation against the grant of the permit, in which the Administrator again concurred. The District Court, after reviewing the evidence and discussing the findings and decision, held that the Administrator acted not upon facts but upon suspicions and accordingly reversed his order and directed that a permit be issued.

Plainly this case is ruled by the law of Ma-King Products Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046, and Yudelson v. Andrews (C. C. A.) 25 F.(2d) 80. The case, both in respect to the evidence and to the actions of the administrative and judicial officials is however largely one of suspicions. The Hearer and the Administrator suspected that Eisenberg was trying to obtain a permit to withdraw alcohol ostensibly for lawful purposes but really for unlawful purposes. The District Judge had like suspicions, yet, refusing to act upon them, remanded the case for evidence which might establish fact grounds for the Administrator's decision. We, too, have a suspicion. It is that the Prohibition Administrator hopes by pressing this case to push the law of Ma-King and Yudelson just a little farther and thereby obtain for himself a power just a little broader. As the law of these cases, evidently in the opinion of the Supreme Court and certainly in the opinion of this court, is adequate for the guidance of officials, both administrative and judicial, having to do with the grant and refusal of permits, we stand firmly by the law there declared and apply it to the two questions

here involved. The first, as stated by the Commissioner, is as follows:

Is the regulation of the Treasury Department requiring the applicant in a permit for the withdrawal of specially denatured alcohol for the manufacture of toilet waters to have an equipment to the value of at least five thousand dollars ($5,000) a mandatory provision, and is the failure to have such equipment adequate ground for the refusal by the Administrator of a permit for the manufacture of toilet water?

The applicant testified that he had saved $2,000 and had borrowed $1,000 from his wife, making $3,000, which he had spent for equipment, rent and other expenses, and that he had $300 with which to carry on the business of making and selling toilet waters, a business which, though it may be as lawful as that of building churches, has, for good reasons, fallen under suspicion. An agent for the department testified that the equipment was worth only $1,322.81.

With these figures before him the Administrator found that the equipment displayed by the applicant was not sufficient to carry on a legitimate business of the kind and size contemplated, a pertinent finding when based on supporting facts, but he based the finding on the applicant's failure to comply with Article 112 of Treasury Department Regulations No. 3, which provides:

"Where toilet articles, or various liquids such as deodorants or sprays, are to be manufactured, there should be on hand equipment in the nature of raw materials, manufacturing apparatus, and packages for finished product of a value not less than $5,000, and the applicant must submit a detailed inventory of all raw materials such as oils and chemicals; of all manufacturing apparatus such as tanks, pumps, filters and filling machines; all packages on hand in which the finished product is to be sold, and the inventory must be verified item by item."

We concede that in a given case—indeed in every case—where a person engaged or intending to engage in a lawful industry applies for a permit to withdraw alcohol for manufacturing purposes, his facilities for conducting such a business in a lawful way are proper subjects of inquiry as bearing on his fitness to be entrusted with a permit, and in passing on that question the authorities may avail themselves of special or common knowledge on the subject. But to measure the sufficiency of equipment in every instance by one fixed sum—$5,000—and to include therein raw materials and packages for finished products, things obviously not needed before a permit to withdraw shall have been granted and manufacturing shall have begun, is arbitrarily to fix a requirement not applicable to every case. Cases differ in location, costs, and personnel and requirements differ with them. The figures in this case are small, yet they may be large enough to cover an adequate initial equipment for a small adventure. The National Prohibition Law makes no distinction between big business and little business. The original equipment of the great Richardson & Robbins canneries was a kitchen stove. Moreover, by such a uniform rule prohibition officers assume the right to determine not merely whether in a certain case an applicant is properly equipped to do a lawful business under a permit but the amount of capital everyone about to engage in a lawful business under a permit must have. If the Treasury Department can validly promulgate such a rule and can validly bind everyone by it, then the department can fix the minimum financial requirement at a sum so large as to be prohibitive and thereby defeat the very purpose of the National Prohibition Act to permit the use of alcohol in industry. That would be a bureaucratic regulation of industry rather than a departmental administration of the National Prohibition Law.

We agree with the learned trial judge that non-compliance with the literal terms of the regulation is not a ground for refusal, but non-compliance with a fair requirement that fits the particular case may be a valid ground for refusal, or compliance therewith may be made a condition on which a permit shall be granted.

The second question involved—the usual and very proper one in permit cases, addressed to the fitness of the applicant to have a permit—is:

Whether or not the decision of the Administrator in refusing a permit for the withdrawal of specially denatured alcohol for the purpose of manufacturing toilet waters under the National Prohibition Act to the applicant was based upon an error of law or wholly unsupported by evidence or clearly arbitrary or capricious.

To a question whether he had ever been arrested, the applicant answered "no." It turned out on cross-examination that years before he had been mixed up in a labor dispute and had in fact been arrested but later the charges were dropped. The Administrator, invoking the rule falsus in uno, falsus in

omnibus, now argues that as the applicant lied in one particular he might properly infer that his testimony was false in every particular. As it is possible that the applicant had quite honestly forgotten the incident, just as a perfectly truthful person, long ago arrested for violating some traffic ordinance, might have a similar lapse of memory, and as the applicant's denial of arrest had no relation in point of fact or time to the grant of a permit, we find with the learned trial judge that the matter is not a ground justifying refusal.

Lastly, the applicant had been a truck driver for the Globe Products Company, a concern (charged with being engaged in both a legitimate and an illegitimate business) which the Administrator says had the reputation of being a cover house—a house co-operating with permittees and aiding them to divert alcohol from lawful to unlawful channels, but submits no fact from which this inference or conclusion was drawn. This is another suspicion; strong perhaps, yet not grown into a fact. The applicant's period of service was short and came to an end because of inadequate wages. There is no evidence that he knew, was in a position to know, or took any part in the alleged illegitimate part of his employer's business.

We cannot find, under the Ma-King rule, evidence enough to sustain the Administrator's decision. The order of the District Court is affirmed.