**TRU-BLU BEVERAGE CO. v. DORAN, Prohibition Commissioner, et al.**

Circuit Court of Appeals, Third Circuit.
June 7, 1929.

No. 3993.

Harold B. Beitler, of Philadelphia, Pa., for appellant.

Richard H. Woolsey and George W. Coles, U. S. Attys., both of Philadelphia, Pa., for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and FAKE, District Judge.

WOOLLEY, Circuit Judge. The Tru-Blu Beverage Company applied for a permit to engage in the business of manufacturing cereal beverages of less than one-half of one per cent. of alcoholic strength by the process of de-alcoholization authorized by section 37, title 2, of the National Prohibition Act (27 USCA § 57). The Prohibition Administrator denied the application, and the District Court on a bill for review sustained his decision. The case is here on the company's appeal from the court's decree.

The Tru-Blu Beverage Company was a newly organized corporation whose capital had been contributed by three men, all new to the business, singularly uninformed as to probable earnings and seemingly indifferent as to immediate financial returns in view of a hoped for early modification of the National Prohibition Act. They purchased the brewery owned by the Northampton Brewing Company, located at Northampton, Pennsylvania, which after a raid and forfeiture of its permit had been closed by order of court for violating the National Prohibition Act. The bond which is required by the Regulations to accompany their application for a permit was procured for them from a surety company—a condition precedent to the purchase of the brewery—by a group of persons interested in the offending Northampton Brewing Company, who, together with the president of the applicant company, became indemnitors on a counterbond to the surety company.

■ The sole question in this case is whether under the rule of Ma-King Products Co. v. Blair (C. C. A.) 3 F.(2d) 936; Id., 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046; and Yudelson v. Andrews (C. C. A.) 25 F. (2d) 80, there was a fact basis for the exercise of the Administrator's discretion adverse to the application, or, stated differently, whether his findings and his decision were wholly unsupported by evidence and were therefore arbitrary or capricious.

Although two of the men interested in the application denied any knowledge of how the permit bond had been obtained and vigorously contested its imputations, the third could hardly do so as he had participated in the bond transaction which, together with the purchase of the brewery, was conducted throughout by the attorney for all of them. We hold there was evidence which sustained the Administrator's finding that the applicant was, through its stock ownership, so closely connected with former violators of the law as to make it not a suitable corporate person to be entrusted with the possession of liquor susceptible during its manufacture of diversion to unlawful uses, and that this evidence justified his decision denying the permit.

■ If this were all of the case we should affirm the decree of the District Court without an opinion. But the case presents another matter on which the Prohibition Administrator in part based his decision and in respect to which he has asked for a direct ruling.

Among the Hearer's specific findings of fact are two: One, that within varying radii from the town of Northampton there are breweries for the manufacture of cereal beverages, enumerating them; and the other, "There is no additional need for near beer in that locality such as would warrant the issuance or granting of a permit." Adopting this finding, the Administrator gave as one of the reasons for refusing a permit that "There is no need for the granting of a brewery permit in this section."

This was not a casual finding but one deliberately made and one on which the Administrator now earnestly contends that he may always act in the exercise of his discretion in granting or refusing permits. This calls for a brief consideration of the law which the prohibition authorities are called upon to administer and the courts to enforce.

When the Congress proposed and the States ratified the Eighteenth Amendment to the Constitution of the United States, prohibiting "the manufacture, sale or transportation * * * of intoxicating liquors * * * for beverage purposes," they, by clear exclusion, did not make the manufacture, sale, transportation or use of intoxicating liquors for industrial purposes unlawful. United States v. Katz, 271 U. S. 354, 358, 46 S. Ct. 513, 70 L. Ed. 986. The Congress, when it came to enact a national law for the enforcement of the Amendment, recognized this fact and recognized also that the sale and use of intoxicating liquor for any lawful

purpose, industrial or sacramental, were fraught with difficulties inescapably incident to such a commodity which if not effectively met would defeat the very object of the Amendment. Therefore the Congress fully alive to the fact that liquor, usually in the form of alcohol, may still be lawfully used in industry, provided for its regulation by requiring that those who sought such use should conform to certain rigid requirements so that alcohol withdrawn for lawful use should not be diverted to unlawful use. These requirements are both formal and personal; formal as to bonds, equipment, etc., and personal as to the fitness of the applicant to be entrusted with a commodity which may be used both lawfully and unlawfully and which from its very nature tends to unlawful use. It was manifest that the duty of preventing the unlawful use of liquor and regulating its lawful use must be placed upon someone. This was a serious task which, in view of human infirmities, is difficult of performance. So the Congress placed the duty upon the Prohibition Commissioner and in turn upon the Prohibition Administrators for prescribed districts who were given in its performance a very broad discretion, yet a discretion based not lightly on whim but soundly on facts. To do what? Certainly the two things contemplated by the law, namely, to stop the use of liquor for unlawful purposes and to continue its use for lawful purposes yet in such a way that the main object of the Amendment should be carried out. As to this discretion the Supreme Court has spoken very clearly in the Ma-King Case, supra. But the Prohibition Administrator claims in this case that in order adequately to effect the purpose of the Amendment against the use of intoxicating liquors for beverage purposes he may not merely regulate but may also limit and altogether deny the use of intoxicating liquors (usually alcohol) for industrial purposes if, in his judgment, "there is no need for the granting of a permit" to use alcohol for such lawful purposes in any part of his district. Thus he would make himself an arbiter not only of the persons who may lawfully use alcohol but of the industries and, indeed, of the sections of the country in which it may be lawfully used. The purpose for the desired use of alcohol in this case is the manufacture of a cereal beverage called "near beer" which in its manufacture has first a high alcoholic content which later is reduced to the alcoholic content prescribed by the law. Whether to use alcohol in such a business is a right or a privilege, clearly the business is lawful and when properly conducted is as innocent as printing books with ink containing alcohol. That many persons may be engaged in many such lawful businesses—more, perhaps, than in the Administrator's judgment are really "needed" in a given community—is not a ground for his refusal to issue a permit to use alcohol lawfully; nor is the increased possibility of violations of the law and the increased difficulty of detecting them because of increased numbers of concerns lawfully using alcohol a ground for defeating their recognized right to its lawful use; nor is the number of competing concerns in the manufacture of a lawful product evidence that an additional concern intends to violate the law. Lawful businesses in a given locality cannot because the number is large be regarded as unlawful businesses, nor is the supply of a lawful product seemingly in excess of local demand a valid ground for refusing a permit, for a producer has the world for his market and there is nothing in the law that restricts it. Otherwise the Administrator instead of preventing the unlawful use of alcohol and regulating its lawful use would step into the industrial field and determine which industry should live and which should die and which should not be born at all. If, not stopping with the admittedly necessary regulation of industry in using alcohol, he should determine what industries should and should not use alcohol lawfully, whether they be for the manufacture and sale of cereal beverages, medicines, food flavoring extracts, or soap, he would, we think, be exercising a power which the Congress did not give him. Doran v. Eisenberg (C. C. A.) 30 F.(2d) 503.

If the specific finding that there was no need for granting a permit in this case were the only one on which the Administrator based his decision in refusing the application, we should be constrained to hold that his decision was not supported by valid evidence; but as there was other evidence which alone was sufficient to sustain his decision, we affirm the order of the District Court which in turn approved his decision.