**STEIN v. DORAN, Prohibition Com'r, et al.**

Circuit Court of Appeals, Third Circuit.
January 15, 1930.

On Petition for Rehearing Feb. 28, 1931.
No. 4248.

The opinion of Kirkpatrick, District Judge, follows:

This is a bill in equity to review the action of the Federal Prohibition Administrator, revoking the complainant's permit to use 36,-000 gallons of specially denatured alcohol per month for the manufacture of toilet water and hair tonic. There were two separate citations, one based upon title 2, § 5, of the National Prohibition Act (27 USCA § 14), notifying the permittee that, upon analysis, certain of his products were found not to correspond with the descriptions and limitations provided by title 2, § 4 (27 USCA § 13); and the other based upon title 2, § 9, of the act (27 USCA § 21), charging the permittee with failure to conform in good faith to the provisions of the law, and setting forth as specific instances the manufacture of certain preparations not according to the approved formula, from which preparations potable alcohol could be obtained by "simple manipulation."

There was sufficient evidence to support the hearers' finding that the permittee's manufactured product was not in accordance with the approved formula on file with the Prohibition Department at Washington. The products in question were apple blossom perfume and lilac toilet water. The formula for the apple blossom perfume called for 1 ounce of apple blossom oil, 83 ounces of specially denatured alcohol (formula 40), and

sufficient water to bring the mixture up to 1 gallon in volume. The lilac toilet water formula was exactly the same, except that the oil specified was lilac oil.

There is no dispute that the proportions of the ingredients in both mixtures actually manufactured was correct; that is, each contained the proper quantity of specially denatured alcohol, the proper quantity of water, and the proper quantity of some kind of oil. The point at issue is whether the oil used would properly be described as apple blossom oil in the one case and lilac oil in the other. The importance and materiality of requiring an oil which honestly answers the description of the formula appear from the testimony of the government chemist that the permittee's product from which samples were taken could be readily changed into drinkable alcohol by a simple process, whereas preparations made with the oils named in the formula could not be transformed into drinkable alcohol at all, or possibly only by a very difficult process. It will thus be seen that the mere fact that the percentages of specially denatured alcohol, oil, and water were correct is, in itself, unimportant as evidence of the permittee's good faith.

Experts called by both sides agreed that the products commercially known as apple blossom oil and lilac oil are rarely, if ever, extracted from the flowers themselves, but are usually synthetic oils produced by ony one of three or four different chemical combinations. Neither side attempted to fix definitely all of the different methods by which such oils could be manufactured, or to name the various ingredients of which they might properly consist. Both sides agree unqualifiedly that it is absolutely essential, in order that an oil may answer the description of the formula, that it have a distinctive odor, either of apple blossoms or of lilac. A witness for the permittee, who was also manager of another company engaged in making essential oils, testified as follows: "Q. Now, Mr. Reich, your definition of Apple Blossom Oil, then depends entirely on the odor and nothing else? A. Positively on nothing else." This was also the result of the testimony of the government expert, who added the important fact that the presence of the elements which gave the true oil (whether synthetic or natural) its characteristic odor was the thing which prevented its redistillation into drinkable alcohol.

Upon this vital point, the hearer reported: "The hearer, himself, examined the finished product, and convinced himself that the Apple Blossom could not be used as a perfume, and the Lilac Toilet Water could not be used as a toilet water in the form in which it was manufactured." As a basis for this conclusion, he had (a) the evidence of his own senses; (b) the testimony of the government chemist to the effect that the lilac toilet water "wasn't found to contain any of the odors that the lilac toilet water should contain, the accepted odors in the trade," that the apple blossom oil "was of an indefinite nature, its constituents give a flavoring extract taste instead of a perfume character * * * not a bona fide oil on account of its fruity character instead of a perfume character," and that the apple blossom and lilac oils were so nearly alike that neither he nor other chemists could detect any difference in the odor; and (c) that the manager of the establishment when given six samples of his own product to identify by smell guessed wrong three times.

To support the revocation, under title 2, § 5, of the act (27 USCA § 14), of an entire basic permit, it must appear that the article manufactured by the permittee does not correspond with the descriptions and limitations provided in section 4. Turning to title 2, § 4, subsection (d) 27 USCA § 13(d), the only descriptions and limitations for this class of articles are that they must be properly toilet preparations, and that they must be unfit for beverage purposes. The only fact established by the evidence is that these particular preparations do not correspond with the formulas on file. It does not appear that they are not properly described as toilet preparations, or that they are fit for beverage purposes.

To support the revocation of a permit under title 2, § 9 (27 USCA § 21), it must appear that the permittee has not in good faith conformed to the provisions of the act, and this of course includes the regulations made by virtue of its authority. In this case, as we have already seen, the evidence clearly shows an actual failure to conform with the regulations, in that the permittee manufactured a preparation otherwise than in accordance with the formula on file at Washington. The question remains whether the departure was an innocent mistake, or whether it constituted failure to conform in good faith within the meaning of the act.

In the first place, I am of the opinion that, where it is proved that a permittee has violated the regulations, the burden is upon him to show that such violation was innocent of bad faith, unless of course the permittee's

good faith clearly appears from the testimony presented for the revocation. In this case it is an important consideration upon the question of good faith that the violation of the regulations was of a character which enabled the permittee to place upon the market a preparation which could be easily turned into drinkable alcohol, whereas, if he had conformed, the product would have been practically impossible to redistill with success. It would take considerable evidence of good faith to overcome the inferences arising from this fact. In addition it appears that each month that the permit had been in force this permittee disposed of his entire month's product to a single customer. There were three of these altogether, two of whom had the reputation of notorious cover-up houses and were under investigation by the department. In no case did the permittee make the slightest investigation as to the character of the persons to whom he was selling, the nature of their business, or the purpose for which they were buying. In Singer v. Doran, 32 F.(2d) 531, 533, we said: "The law does not require that the permittee, in the absence of connivance on his part or knowledge of suspicious circumstances, take steps to ascertain the character of the persons to whom he sells his product." It was also held in Doran v. Eisenberg (C. C. A.) 30 F.(2d) 503, that the mere fact that the permittee has associated with persons who bore bad reputations with the department, but against whom no prosecutions have been brought, is not sufficient ground on which to deny a permit. These cases, however, are to be distinguished from the present one. Here it has been proved that the permittee failed to conform to the regulations, and that by reason of his failure an easily reclaimable product was placed upon the market. When the good or bad faith involved in such violation is in issue, we may consider many matters which in themselves would not be sufficient ground for the revocation of a permit or the refusal of a new one. Among these are the character and reputation of the permittee's customers, his own statements as to his acquaintance or lack of acquaintance with them, and the circumstances surrounding the alleged sales, whether they appear to be such as are ordinarily made in the course of business, or whether they are of such a character as, in themselves, to arouse suspicion.

The administrator's action in revoking the permit so far as it was based upon title 2, § 5, of the act (27 USCA § 14) may have been erroneous, but there was plenty of reason to sustain it under title 2, § 9 (27 USCA § 21). I am satisfied that under the principles laid down in Ma-King Products Company v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046, and Yudelson v. Andrews (C. C. A.) 25 F.(2d) 80, the action of the Commissioner was neither wholly unsupported by the evidence nor clearly arbitrary or capricious.

The action of the Commissioner is affirmed.

N. S. Winnet and B. I. DeYoung, both of Philadelphia, Pa., for appellant.

Calvin S. Boyer, Acting U. S. Atty., and Richard H. Woolsey, both of Philadelphia, Pa., for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and JOHNSON, District Judge.

PER CURIAM. Affirmed on the findings and reasoning in the opinion, KIRKPATRICK, District Judge, sur pleadings and proofs.

On Petition for Rehearing.

PER CURIAM.

After a rehearing on the appellant's petition, the decree of the District Court remains affirmed on Judge Kirkpatrick's opinion.