**PENNINGTON, Prohibition Administrator, et al. v. BARR MFG. CORPORATION.**

No. 4341.

Circuit Court of Appeals, Third Circuit.

July 14, 1931.

Louis E. Graham, U. S. Atty., W. J. Aiken, Asst. U. S. Atty., and James H. Dilley, all of Pittsburgh, Pa., for appellants.

E. Lowry Humes and Humes & Prather, all of Pittsburgh, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and KIRKPATRICK, District Judge.

WOOLLEY, Circuit Judge.

This appeal is from a decree of the District Court ordering that the revocation of two permits to the Barr Manufacturing Corporation for the withdrawal of specially denatured alcohol and grain alcohol be vacated and the permits re-instated.

The matter arose before the administrator, went to the District Court and has reached this court under section 9, title 2, of the National Prohibition Act (27 USCA § 21), which provides:

" * * * If the commissioner has reason to believe, that any person who has a permit is not in good faith conforming to the provisions of this chapter, * * * the commissioner or his agent shall immediately issue an order citing any such person to appear before him * * *," for a hearing in revocation proceedings.

The Administrator thought, and has contended all along, that he issued the citation seasonably—that is "immediately"—after finding a "reason to believe" that the permittee was violating the law. The trial court held the contrary. We think the case turns not so much on the time at which the Administrator conceived his reason to believe violations, or on the promptness with which he issued the citation, as on his justification for doing so, that is, on the existence or soundness of a "reason to believe" that the permittee was "not in good faith conforming to the provisions" of the act, for, after all, a permittee may in entire good faith fail precisely to conform to the act with respect to formulæ and when that happens it is not a ground for citation and revocation of the permit; it is an occasion for administrative correction. Citation and revocation without a reason would be arbitrary and capricious. On the other hand, when a permittee fails to conform to the law by deviating from a prescribed formula, that fact viewed in the light of questionable circumstances may constitute a valid reason for the Administrator to believe that the permittee is not acting in good faith and may require that he issue a citation. But until the essential ingredient of bad faith in the reason moving the Administrator to action is determined, a question whether he has moved "immediately" within the meaning of the act does not arise. Therefore in order to decide this case we shall look into the question of good faith and bad faith by reviewing in bare outline several occurrences disclosed in this large record.

They began October 1, 1927, and extended to October 31, 1928. A few days later, the Administrator first conceived that he had reason to believe that the permittee was not acting in good faith under the denatured alcohol permit, issued a citation and later revoked both permits. This belated arrival at a reasonable belief of misconduct was not due to lack of information on the part of the Administrator because throughout the whole of these thirteen months Barr, the president of the permittee-company, was in constant correspondence and communication with the Administrator, and was acting seemingly in good faith and certainly with entire frankness. Some of the things which came to the attention of the Administrator were communicated to him by Barr himself. In other words, Barr was conducting a large business under two permits and apparently had every reason to observe the law, and when deviations from formulæ were, from time to time, found under different circumstances, he and the Administrator worked together to correct them, and when Barr's product was found in the hands of "suspicious" people, though not sold directly to them, again there seemed to be accord between the Administrator and Barr, as indicated by the willingness and promptness with which Barr stopped sales in those directions and generally did what the Administrator asked.

The trouble had its start in October, 1927, when the Barr Manufacturing Corporation applied for increased alcohol withdrawals under one of its permits. On the usual preliminary investigation in such case it was found that alcohol in the company's toilet water—one of its products—was higher and the essential oils lower than were required by the formula. Barr, the managing officer of the permittee, stated that he was under the impression that quantitative formulæ were necessary only under grain alcohol permits and not under permits for use of denatured alcohol, and was somewhat induced to this belief by the ensuing correspondence with the Commissioner of Prohibition who said:

"You are advised that before any action can be taken thereon it will be necessary for you to submit complete quantitative formulæ for the flavoring extracts and sufficient of the formulæ for the remaining preparations to show that they are unfit for use as beverages."

The Administrator nevertheless enlarged the permit as requested by the permittee for the withdrawal of 4,500 extra gallons a month, reports showing that the company's equipment was adequate and Barr's reputation excellent. Things went on until copies of quantitative formulæ were sent to Barr; no serious complaint in the meantime being made by the Administrator and a perfectly sensible administrative effort being made on his part to straighten out things.

In April, 1928, toilet water manufactured by the permittee was found in possession of another concern containing an excess quantity of alcohol, and in May, 1928, two fifty gallon drums of the permittee's product in the hands of a third person were seized in New York, showing deviations from the formula. In these instances the product was being redistilled for unlawful purposes. No connection between the permittee and those engaged in that work was proved or charged. Analyses of these products were made from samples acquired elsewhere and from the Barr Manufacturing Corporation itself and sent to the Administrator. During all this time the Administrator did not charge the permittee with bad faith, for, indeed, as the trial court found, there was no evidence of wilful violation of the permit requirements. Then, on November 1, the Administrator says that for the first time he had reason to believe that the permittee was not operating in good faith under the permit in question and, after issuing a citation, revoked both permits. If the several acts followed by conferences and correspondence between the Administrator and the Barr Manufacturing Corporation, running through thirteen months, did not suggest to the Administrator a "reason to believe" that the permittee was violating the law, it must be that they did not suggest lack of good faith on the part of the permittee. We are unable to distinguish bad faith in the doings at the end of the period from bad faith in the doings at the beginning, and if, during the period, ending October 31, 1928, there was, as we think, no reason for the Administrator to believe that the permittee was not in good faith complying with the law, there was none early in November and therefore none to justify the issuance of a citation. This brings us back to the point with which we started, namely; that before the Administrator can cite a permittee for violation of a permit as the first step in its revocation, he must at least have "reason to believe" bad faith of the permittee.

Assuming that throughout the Administrator conscientiously performed his duty, we are of opinion that his failure, until about November 1, 1928, to form a reason for believing bad faith of the permittee from acts, transactions and conferences extending over a year, must be because those acts and transactions were separately regarded by him to involve good faith and, if so, it is difficult to see how they could cumulatively and suddenly involve bad faith. We find that the evidence, as well as the Administrator's long continued conduct, does not support a reason for belief on his part that the permittee in this case was not in good faith conforming to the provisions of the act.

We therefore hold that where a permittee has deviated from a formula, the Administrator, in order validly to issue a citation and revoke the permit on that ground under section 9, title 2 of the act, must also have, as an ingredient to his right of action, a reason to believe that the deviation was not made in good faith. But here we stop and that is the extent of this decision. We are anxious that the law of this case should not be confused with the law of the Jean Chemical Company Case. Stein v. Doran, Pro. Com. (C. C. A.) 46 F.(2d) 738. Here we are dealing with deviations from a formula and the Administrator's reason to believe bad faith of the permittee as a condition precedent to the issuance of a citation. There we were dealing with a situation in which these preliminary essentials had been met and a valid citation had been issued and where, accordingly, the Ad-

ministrator at the hearing had only to prove a violation of the regulations by proving a deviation from the formula, whereupon the burden of proving good faith in the deviation shifted to and rested upon the permittee.

One ground for revocation, occurring about the time the citation issued, on which the Administrator insistently relied was a circumstance involving, as he says, misconduct of Barr which indicated unfitness of his company longer to have permits for the withdrawal of alcohol. It was briefly as follows:

On November 17, 1928, Barr learned that the Administrator intended to revoke his company's permits. He at once went to Pittsburgh for the purpose of seeing the Assistant Prohibition Administrator about it. He called him by telephone and succeeded in making an appointment for the next day. In this telephone conversation Barr told the Assistant Administrator that on that night he was going to have a conference at his hotel with a young attorney who was retiring from the prohibition office, which had been arranged by a mutual friend. He did not know his name. The Assistant Administrator thereupon secured a room next to the room which Barr occupied in the hotel and installed agents to listen in relays at the keyhole to all conversations which should occur in Barr's room. In due course the young attorney, who, though he had resigned, was still connected with the Administrator's office, came in and, after being introduced, offered Barr his professional services in the matter of the citation, which after some conversation Barr definitely declined. It is plain from the testimony that the interview was solicited by the attorney, not by Barr, and that Barr did not avail himself of the attorney's imprudent offer. Indeed, we find nothing sinister in this transaction, particularly as Barr himself had apprised the Assistant Administrator of the proposed conference. Unfortunately for Barr, however, he expressed to the young attorney his views about the Assistant Administrator which were heard by the man at the keyhole and reported to that official. When one secretly listens or causes others to listen to a private conversation, he should not complain if it is not complimentary to him. At all events, Barr's personal opinion of the Assistant Administrator, while offensive to that officer, was not an offense against the National Prohibition Act, nor was it a ground for the revocation of the company's permits.

The decree of the District Court is affirmed.