**HERBERT, Federal Prohibition Administrator, et al. v. ANSTINE.**

Circuit Court of Appeals, Fourth Circuit. January 14, 1930.

No. 2878.

A. W. W. Woodcock, U. S. Atty., of Baltimore, Md., and Will H. Krause, Legal Adviser, 7th Prohibition Dist., of Washington D. C., for appellants.

J. Abner Sayler, of Baltimore, Md., for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

WADDILL, Circuit Judge. This is an appeal from a decree of the District Court of the United States for the District of Maryland, entered on January 2, 1929, directing the appellants to restore to the appellee a permit to sell intoxicating liquor within the limitations of the law, together with the privileges connected therewith, and abating certain taxes assessed against appellee.

On August 13, 1927, the appellee, Clarence L. Anstine, applied for a renewal of his druggist's permit, serial No. Md–I–361, authorizing him to secure and dispose of intoxicating liquor within the limitations of the law, which included, among other things, the right to dispose of such liquor on physicians' prescriptions given on form 1403, in quantities not exceeding one pint of liquor in ten days to the same person for nonbeverage purposes, the total alcoholic content of each pint of liquor not to exceed eight ounces. The renewal permit was granted on December 28, 1927, for the calendar year 1928.

On March 31, 1928, Anstine was cited to show cause why said permit should not be revoked on the ground that he had unlawfully conspired with one Dr. Stansbury, of Baltimore, to sell unlawfully 14 pints of whisky on prescription blanks which had been issued to Dr. Stansbury for writing prescriptions; that Anstine had connived at the false and fraudulent issuance by Dr. Stansbury of said prescription blanks; and that he had unlawfully purchased from Dr. Stansbury 20 prescriptions for whisky on government form 1403; and that he had unlawfully sold whisky on 14 prescription blanks, knowing that the parties obtaining whisky thereon were not the parties mentioned in said blanks. The citation also charged that Anstine had not in good faith complied with the provisions of the National Prohibition Act, the regulations authorized thereunder, and the terms of his permit.

A hearing was held in said revocation proceedings on April 25, 1928, and on May 9–11, 1928, before a hearer duly appointed by the Prohibition Administrator to sit for and hear such cause for him, at which hearing Anstine was present with his attorney and witnesses. Upon consideration of all the evidence adduced at this hearing, the hearer found that the charges against Anstine had been sustained, and recommended that his permit be revoked and canceled, which recommendation was adopted by the Prohibition Administrator, who, upon notice to Anstine, duly directed the annulment of said permit.

Thereupon the permittee, Anstine, filed this bill in the District Court of the United States for the District of Maryland, asking that the action of the Prohibition Administrator be reviewed and reversed, and that the said permit be renewed and restored to him, and, further, that the Prohibition Administrator and others be restrained from interfering with the enjoyment of the permit, or from collecting certain taxes alleged to be due by Anstine. The appellants duly answered. At the hearing in the District Court, the case was tried de novo, upon the evidence adduced before the hearer. No additional testimony was offered by the government, though sundry witnesses were examined in open court by the appellee.

The trial court, treating the case as a hearing de novo, by decree of January 2, 1929, directed the Prohibition Administrator and others to restore the permit to the

appellee, Anstine, and further ordered and decreed that the differential tax, as described in the bill of complaint, be abated. The appellants appealed from said decree, assigning errors to the court's rulings, as follows:

"1. The Court erred in ruling and deciding that the permit must be restored to the plaintiff.

"2. The Court erred in ruling and deciding that the taxes alleged to have been assessed against the plaintiff must be abated.

"3. The Court erred in receiving testimony not produced before the Commissioner upon the review of the Commissioner's decision.

"4. The Court erred in considering and treating the review of the Commissioner's decision as a trial de novo.

"5. The Court erred in ruling and deciding that the Commissioner was not justified on the evidence presented before him in revoking the plaintiff's permit.

"6. The Court erred in not limiting his inquiry as to whether the action of the Commissioner was based upon an error of law, or was wholly unsupported by the evidence or was clearly arbitrary or capricious."

These assignments are six in number, but really involve only three questions: The first, third, and fourth assignments all relate to the method of procedure, whether the hearing should have been one de novo before the District Court, or by review of that court of the action taken by the Administrator and the hearer, together with the effect to be given to the District Court's action. In thus considering these assignments, that is, the first, third, and fourth, together, we come at once to the determination of the question of what is the correct method to be adopted by the District Courts in the consideration and disposition of cases of the class under review here. In this instance, the trial court, apparently without objection by the government, if not with its tacit assent, proceeded upon the theory that it was charged with the duty of trying the case anew, and rendering its judgment determining the rights of the parties. It is only fair to say that the cases were in a state of uncertainty as to just what was the proper course to pursue, and that, for that reason, there was much warrant for the District Court's action, until the recent decision of the United States Supreme Court, Ma-King Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046. The second sec-

tion of the syllabus to this case is as follows:

"In a suit in equity, under the Prohibition Act [27 USCA] to review a decision of the Commissioner refusing such an application, the court does not exercise the administrative function of determining whether the permit should be granted, but merely determines whether, upon the facts and law, the action of the Commissioner is based upon an error of law, or is wholly unsupported by the evidence, or clearly arbitrary or capricious."

In considering this case, and bearing upon the specific question we have to determine here, Mr. Justice Sanford, speaking for the entire court, said, at pages 482, 483 of 271 U. S., 46 S. Ct. 545:

"It is clear that the Act does not impose on the Commissioner the mere ministerial duty of issuing a permit to any one making an application on the prescribed form, but, on the contrary, places upon him, as the administrative officer directly charged with the enforcement of the law, a responsibility in the matter of granting the privilege of dealing in liquor for nonbeverage purposes, which requires him to refuse a permit to one who is not a suitable person to be entrusted, in a relation of such confidence, with the possession of liquor susceptible of diversion to beverage uses.

"The dominant purpose of the Act is to prevent the use of intoxicating liquor as a beverage, and all its provisions are to be liberally construed to that end. It does not provide that the Commissioner shall issue any liquor permit, but merely that he may do so. It specifically requires the application to show 'the qualification of the applicant,' and authorizes the Commissioner to prescribe, 'the facts to be set forth therein.' These provisions, as well as the purpose of the Act, are entirely inconsistent with any intention on the part of Congress that the Commissioner should perform the merely perfunctory duty of granting a permit, to any and every applicant, without reference to his qualification and fitness; and they necessarily imply that, in order to prevent violations of the Act he shall, before granting a permit, determine, in the exercise of his sound discretion, whether the applicant is a fit person to be entrusted with such a privilege. This is emphasized by the provision that if the Commissioner refuses an application, his action may be reviewed by a court of equity in matter of fact and law; there being no substantial reason for this

provision if he is imperatively required to grant a permit upon the mere presentation of an application in due form.

"On the other hand, it is clear that Congress in providing that an adverse decision of the Commissioner might be reviewed in a court of equity, did not undertake to vest in the court the administrative function of determining whether or not the permit should be granted; but that this provision is to be construed, in the light of the well-established rule in analogous cases, as merely giving the court authority to determine whether, upon the facts and law, the action of the Commissioner is based upon an error of law, or is wholly unsupported by the evidence or clearly arbitrary or capricious."

In the light of this clear and comprehensive statement of the Supreme Court of the United States, we feel that it is entirely unnecessary to devote time to a discussion of the power and authority of the District Court in cases of the character under consideration. Jurisdiction exists only to empower the court to pass upon the question whether, under the facts and law, the Commissioner was warranted in exercising his discretion as he did in the action taken, not whether the court might, upon the same facts, or a different state of facts, as here, come to a different conclusion. Ma-King Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046, supra; Yudelson v. Andrews (C. C. A.) 25 F.(2d) 80; Stein v. Andrews (C. C. A.) 25 F.(2d) 281, 282; Santangelo v. Blair (D. C.) 28 F.(2d) 875; Blair v. Graupner (C. C. A.) 29 F.(2d) 815.

Assignments 5 and 6 relate directly to the authority of the District Court in reviewing the action of the Commissioner upon the case as made before him, and whether the District Court was warranted in disturbing the action taken upon such findings, under the peculiar facts and circumstances of this case. In order for the District Court to disturb the findings of the hearer and Commissioner, it must be apparent that either an error of law was committed by them, or that their findings were wholly unsupported by the evidence, or that what they did was clearly arbitrary or capricious. The dominant purpose of the act under consideration is to prevent the use of intoxicating liquor as a beverage, and it is the duty of this court to give the same a liberal interpretation to the end that such purpose may be accomplished. Having due regard to the large discretionary powers reposed in these executive adminis-

trators of the law, we cannot see our way clear to say either that there was no evidence to support the findings made by the Commissioner in this case, or that the officers charged with the administration of the law acted arbitrarily or capriciously in what they did. Certainly there was ample evidence, if the same was believed, to warrant the revocation of the permit theretofore granted to appellee to dispense intoxicating liquor. The appellee protested his innocence in the premises, but there was much evidence showing the gravest negligence on his part in exercising the privileges accorded under his permit to dispense intoxicating liquor. He made no claim that he had kept records of his transactions in the manner prescribed by the law and regulations, and he undoubtedly sold, whether innocently or not, liquor to others than those named in the prescriptions, and under circumstances which, by reason of the number and frequency of such sales, required of him the exercise of the utmost caution. These stringent and binding regulations were intended to prevent fraud on the government under the law, and strict and positive compliance therewith is required of those to whom their execution is intrusted. The courts should be extremely careful not to, and only in plain cases to, do or say anything that would give encouragement to those seeking to escape the consequences of their own negligence or omissions to observe plain and positive statutory regulations, made for their benefit, and to which they have subscribed.

The second assignment of error is to the effect that the District Court erred in ruling and deciding that the taxes alleged to be assessable against the appellee should be abated. This doubtless followed as a consequence of vacating what had been done by the Prohibition Commissioner in connection with the revocation of the permit. Just what ought to be done under the changed conditions, with the action of the District Court reversed as to the annulment of the permit, is not entirely clear, and, indeed, seems to have been given little consideration in the disposition of the case. The government, in its answer to the bill of complaint filed against it, avers, in paragraph 10 thereof, that the legality of the tax, and its imposition, cannot be determined in this proceeding, and appellants' brief, if correctly understood, maintains the same position, from which it would appear to this court that the proper disposition of the case, so far as the tax is concerned, is to dismiss the same without prejudice to the government

556

of any right that it may have with respect thereto.

The decree of the District Court will be reversed.

Reversed.