CAMPBELL, FEDERAL PROHIBITION ADMINIS-TRATOR, ET AL. *v.* GALENO CHEMICAL COM-PANY ET. AL.

SAME *v.* D. P. PAUL & COMPANY, INCORPO-RATED.

Nos. 443 and 444. Argued April 25, 1930.—Decided May 26, 1930.

*Assistant Attorney General Youngquist,* with whom *Attorney General Mitchell, Messrs. Mahlon D. Kiefer* and *John H. McEvers* were on the brief, for petitioner.

*Mr. John Fletcher Caskey* argued the cause and submitted a brief for respondents, and *Mr. Charles Dickerman Williams* also submitted a brief for respondents.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

These cases deal with the power of the Commissioner of Prohibition to revoke basic permits to use intoxicating liquors in the manufacture of medicinal preparations. Section 6 of the National Prohibition Act, October 28, 1919, c. 85, Title II, 41 Stat. 305, 310, declares: " No one shall manufacture, sell, purchase, transport, or prescribe

any liquor without first obtaining a permit from the commissioner so to do. . . . All permits to manufacture, prescribe, sell, or transport liquor may be issued for one year, and shall expire on the 31st day of December next succeeding the issuance thereof: *Provided,* . . . That permits to purchase liquor for the purpose of manufacturing or selling as provided in this Act shall not be in force to exceed ninety days from the day of issuance."

Section 4 of the Act provides that the " articles " therein enumerated, including toilet, medicinal and antiseptic preparations, although containing intoxicating liquor, " shall not, after having been manufactured and prepared for the market, be subject to the provisions of " the Act; and that the use of intoxicating liquor in the manufacture of such " articles " is authorized under certain restrictions. Manufacturers are required under this section to procure two permits: one, the basic permit here involved, granting general authority to manufacture such preparations with an alcoholic content; the other, a supplemental permit granting special authority to purchase liquor for that purpose and limited by § 6 to not more than ninety days from the date of issuance. Treasury Dept., Bureau of Internal Revenue, Regulations 60, (1924), §§200, 201, 221, 403; Prohibition Bureau, Regulations 2, (1927) §§ 201, 203, 404.

Section 5 of the Act prescribes that, upon due notice and hearing, the Commissioner of Internal Revenue (after Act of March 3, 1927, c. 348, 44 Stat. 1381, the Commissioner of Prohibition) may revoke permits granted under § 4 for failure to conform the manufactured " articles " with the " descriptions and limitations " of that section; and gives to the manufacturer the right to have the action of the Commissioner reviewed " by appropriate proceeding in a court of equity." Section 9 provides that, upon due notice and hearing, the Commissioner may revoke the permit of " any person who has a permit " and who

" is not in good faith conforming to the provisions of this Act, or has violated the laws of any State relating to intoxicating liquor "; and subjects the action of the Commissioner to judicial review as provided in § 5. Compare *Ma-King Products Co.* v. *Blair,* 271 U. S. 479.

For some years prior to October 1, 1927, the plaintiffs in these two cases had been engaged in the business of manufacturing medicinal preparations and held basic permits issued under § 4 of the Act. Each permit authorizes the use of whiskey in the manufacture of a particular product in accordance with a special formula; was issued pursuant to regulations in force at the time of issuance; and declares that it shall remain in force " until revoked, suspended or renewed as provided by law or regulations." [1] On September 2, 1927, the Treasury Department, Bureau of Prohibition, issued Regulations 2, effective October 1, 1927, in which it is provided by § 218 that " all permits issued and in force and effect on the effective date of these regulations shall expire on December 31, 1928, unless renewed in the manner hereinafter specified . . ." and that thenceforth only annual permits shall be issued. [2] The provision was made ap-

---

[1] The permits provide also: " If this permit requires a supporting bond, the failure to keep such bond in force will *ipso facto* suspend this permit; and this permit may be revoked, suspended, modified, amended, supplemented, extended, or renewed in the manner and for the causes set forth in regulations 60, or specifically set forth herein, or agreed to by the permittee, or otherwise provided by law."

[2] The original regulations issued by the Bureau of Internal Revenue under Title II of the Act, called Regulations 60, effective January 17, 1920, provided in § 18 for permits of annual duration only. On March 14, 1924, Regulations 60 were revised and § 260 provided that all basic permits should be of annual duration; but that type " H " permits, to use liquor in the manufacture of articles " unfit for use for beverage purposes," which are the permits held by these plaintiffs, should be valid " so long as the supporting bond required by these regulations remains in full force and effect, or until canceled, suspended, revoked, or voluntarily surrendered by the permittee." In-

plicable to the basic permits issued under § 4 of the Act to persons engaged in the business of manufacturing medicinal preparations " that are unfit for use for beverage purposes." The plaintiffs, without indicating any intention to waive their rights under existing permits and for the purpose of safeguarding themselves, accordingly filed applications for renewal of their permits.

On December 1, 1928, the Commissioner of Prohibition, having concluded that the use of whiskey by such permittees under § 4 was susceptible of grave abuse and that proper supervision of manufacturing operations involving the use of whiskey could not be maintained by the inspection force, instructed all federal prohibition administrators to grant hearings to applicants for renewal of such permits for the purpose of determining whether or not whiskey is a necessary ingredient in the articles produced by them; to afford them an opportunity to present such evidence as they could to establish that alcohol or other spirits would not properly serve for extraction and solution of the ingredients contained in their products and for the preservation thereof; and to deny permits for the use of whiskey after December 31, 1928, unless its indispensability was clearly demonstrated. The Federal Administrator for the district, acting on these instructions,

---

ternal Revenue Treasury Decision 3773, made on November 14, 1925, anounced that all permits theretofore granted would expire on December 21, 1925, and that thereafter only annual permits would be issued. See also T. D. 3774. The decision was declared void on June 1, 1926, by the United States Circuit Court of Appeals for the Second Circuit in *Higgins* v. *Foster*, 12 F. (2d) 646. Thereupon, the Bureau, by T. D. 3925, approved on September 1, 1926, declared that " H " permits would be deemed valid until surrendered or revoked. But, on November 9, 1926, the United States Circuit Court of Appeals for the Seventh Circuit held in *Chicago Grain Products Co.* v. *Mellon*, 14 F. (2d) 362, that a permit to manufacture denatured alcohol was subject to the one year limitation prescribed by § 6 of the Act. Thereafter, § 218 here in question was incorporated in Regulations 2, revising Regulations 60.

notified the several plaintiffs accordingly and fixed dates for their hearings. Compare *Liscio* v. *Campbell*, 34 F. (2d) 646.

These suits were then brought by the permittees in the federal court for southern New York, against the Prohibition Administrator, the Commissioner of Prohibition and the Secretary of the Treasury to enjoin them from enforcing § 218 of Regulations 2; from proceeding with the proposed hearings concerning the use of whiskey; and from otherwise interfering with the permits held by them. The plaintiffs alleged that their permits contained no date of expiration and had never been revoked, cancelled or surrendered; that they were entitled to have their permits remain in force until they should be revoked pursuant to proceedings under §§ 5 and 9, and that no proceeding for such revocation had been brought. They charged that insofar as Regulations 2 purported to revoke, limit or suspend, without the hearing provided for in §§ 5 and 9, permits theretofore granted to the plaintiffs, it is void as in violation of the Act; that the proposed hearings are without legal warrant; and that the threatened action of denying the further use of whiskey is unauthorized and illegal. The trial court granted an injunction in each case.[3] The decrees were affirmed by the United States Circuit Court of Appeals for the Second Circuit.[4] *Lion*

---

[3] The injunctions granted were interlocutory only. As to two of the original plaintiffs, Lion Laboratories, Inc., and Max Daub, an order of dismissal was granted, because their permits had expired by the express terms contained therein. These two plaintiffs appealed to the Circuit Court of Appeals, where the dismissal was affirmed. But they are not parties in this Court. The Commissioner of Internal Revenue had been joined as defendant; but the Circuit Court of Appeals held he was not a proper party and the bills were dismissed as against him. The plaintiffs acquiesced in this holding.

[4] In the Circuit Court of Appeals, the cases were presented by all parties as tests of the merits of the bills. That court, therefore, passed "the question whether it was proper to grant an injunction pendente lite at all," saying: "If the bill rested upon section 9 of

*Laboratories, Inc.* v. *Campbell,* 34 F. (2d) 642. This Court granted writs of certiorari. 280 U. S. 548.

*First.* The Government contends that § 1, Title II, of the Act defines the word " liquor " as meaning not only the beverages specifically named but also any liquids " containing one-half of 1 per centum or more of alcohol by volume which are fit for use for beverage purposes "; that liquids which are not immediately fit for use as beverages are yet " fit for use for beverage purposes " if they can be made potable by a simple process; that plaintiffs' preparations are of that character;[5] that they are expressly excluded from the Act only " after having been manufactured and prepared for the market "; that,

---

title 2, National Prohibition Act (27 U. S. C. A., § 21) certainly it was not; if it depended upon the general equity powers of the court, we do not decide whether the policy manifested in section 9 applies, when there has been no hearing before the commissioner, and when, as here, the revocation was by regulation (section 218, Regulation 2, October 1, 1927)." 34 F. (2d) 642, 643. In this Court, too, the decrees were treated as final decrees on the merits of the bills.

The decision of the Circuit Court of Appeals on the merits is in accord with its prior decision in *Higgins* v. *Foster, supra,* note 2, and with *Casper* v. *Doran,* 30 F. (2d) 400 (D. C. E. D. Pa.) but is in direct conflict with the *Chicago Grain Products* case, *supra,* note 2, and also with *Cywan* v. *Blair,* 16 F. (2d) 279 (D. C. N. D. Ill.), which expressly refused to follow the *Higgins* case.

[5] The argument is that pure alcohol is not immediately fit for beverage use; but that it may be mediately fitted for that purpose by adding water. Alcohol is unquestionably liquor. It is therefore urged that the same is true of any liquid which, like alcohol, is immediately or mediately fit for use as a beverage and otherwise answers the definition of " liquor." Aside from the argument developed in the text, there are two short answers to this contention. First, alcohol is expressly included in the definition of " liquor " in § 1. No argument can, therefore, be based on the fact that pure alcohol is not immediately fit for use as a beverage. Second, there is no evidence whatever in the record that the plaintiffs' preparations can mediately be fitted for that purpose by the simple process of adding water,—or by any other process.

at the time of manufacture and before preparation for the market, they fall within the term "liquor" as used in the Act; that permits to manufacture the "articles" enumerated in § 4 of the Act are, therefore, permits to manufacture "liquor" within the meaning of the provision in § 6 that "permits to manufacture, prescribe, sell, or transport liquor . . . shall expire on the 31st day of December next succeeding the issuance thereof"; and that, although by their own terms the plaintiffs' permits are to be in force "until revoked, suspended or renewed as provided by law or regulations," they have expired ere this by the operation of § 6. *Cywan* v. *Blair,* 16 F. (2d) 279; *Chicago Grain Products Co.* v. *Mellon,* 14 F. (2d) 362.[6]

We are of opinion that the quoted provision of § 6 is inapplicable to the permits held by the several plaintiffs. Whether or not the preparations manufactured by the plaintiffs are "liquor" while being manufactured and before they are prepared for the market is wholly immaterial. We are not here concerned with the nature of the preparations in their varying stages of development. Our concern is with the object of the permits. This object, and the permission granted, is not simply to manufacture varyingly unfinished products; but to manufacture specified articles containing whiskey, alcohol or other spirits. The products are, by § 4, called "articles" and are expressly excluded from the effect of the term "liquor." Moreover, § 4 authorizes the issuance of permits for the use of whiskey, etc., in the manufacture of medicinal and

---

[6] It is unnecessary for us to consider in these cases whether future applicants for basic permits under § 4 may insist on the grant of permits containing no calendar date of expiration; or whether future permits may properly restrict the use of whiskey only to cases where whiskey is an absolutely necessary ingredient and no other spirits or alcohol will properly serve for the extraction and solution of ingredients contained in the preparations and for the proper preservation thereof.

other preparations only " that are *unfit* for use for beverage purposes "; while " liquor " is defined in § 1 as meaning liquids, in addition to those enumerated, " which are *fit* for use for beverage purposes." The two definitions are mutually exclusive. If the article to be manufactured is fit for use for beverage purposes, and therefore liquor, a permit under § 4 cannot be issued; and *vice versa.* By express and obvious enactment, therefore, the permits held by the plaintiffs are not permits to manufacture liquor and are not within the expiration limit prescribed by § 6.

*Second.* The Government contends also that because plaintiffs' permits, whatever their character, do not provide a calendar date of expiration, they are void or voidable for failure to comply with the further provision of § 6 that every permit " shall designate and limit the acts that are permitted and the time when and the place where such acts may be performed," even though they complied with the regulations in force at the time of issuance. This contention rests wholly upon the assertion that the grant of a permit to be in force until " revoked, suspended or renewed as provided by law or regulation " is not definite.

It has been questioned whether Congress intended to make this provision apply to permits issued under § 4; but we do not express any opinion on that question. Even if applicable, this provision in § 6 does not declare that permits must expire by the calendar. The limitation that the permits shall be in force until revoked, suspended or renewed in accordance with the law or regulations is a sufficient compliance with the general requirement of the designation of the time when the permitted acts may be performed. When a calendar date is required § 6 so states specifically. Ninety days for permits to purchase liquor for the purpose of manufacturing and selling; thirty days for permits to purchase for any other purpose; December 31st next succeeding the date of issuance for permits to manufacture, prescribe, sell or transport liquor,

It is true, that permits for short periods terminating upon definite dates would leave the Bureau much freer in the exercise of its discretion than it could be under indeterminate permits revocable only for cause, established pursuant to §§ 5 or 9. Every permittee applying for a renewal has the burden of establishing his fitness;— whereas, if permits are terminable only by revocation pursuant to the provisions in §§ 5 and 9 the burden to justify closing the business because of some violation of the Act or of the regulations is put upon the Government. But § 6, as well as the rest of the Act, draws an obvious distinction between the manufacture, etc., of intoxicating liquor and that of industrial alcohol and the preparations enumerated in § 4. The former is forbidden, except for certain specified purposes for which liquor is deemed necessary. The latter is ordinarily lawful; and it is the express purpose of the Act to encourage it. *United States* v. *Katz*, 271 U. S. 354, 359. Regulations are imposed only for the purpose of guarding against the diversion of this lawful business into the unlawful business of supplying intoxicating liquor.[7] It is entirely consistent with the avowed purposes of the Act, that the restrictions on the one business should be more severe than those on the other.

*Third.* Finally, the Government contends that even if Congress did not provide for the termination on some definite date of permits issued under § 4, it left the matter continuously open to control by regulations to be issued from time to time; that §§ 5 and 9 are not limitations upon this quasi-legislative police power; that the express provisions of the permits cannot have the effect of bargaining away such later exercise of that power as may be deemed appropriate; and that the regulation of

---

[7] Compare "Industrial Alcohol," a monograph issued by the Treasury Department, Bureau of Prohibition (Gov't Ptg. Office, 1930).

October 1, 1927, is a valid exercise of that power. This contention, also, is unsound.

The limits of the power to issue regulations are well settled. *International Ry. Co.* v. *Davidson,* 257 U. S. 506, 514. They may not extend a statute or modify its provisions. The regulation of October 1, 1927, purports to revoke unexpired permits as of December 31, 1928, without resort to the proceedings prescribed by §§ 5 and 9. It thus attempts to deprive permittees of rights secured to them by these sections of the Act. As was said in *Higgins* v. *Foster,* 12 F. (2d) 646, 648: "We cannot see that the Commissioner, under the guise of legislation, may do in gross what he had no power to do in detail." Whether or not the power to make regulations, or the provision in § 6, authorizes the Bureau to fix expiration dates for permits when issued, it does not authorize the revocation of existing permits in violation of the express provisions of the Act.

*Affirmed.*