**MARRA v. DORAN, Commissioner of Industrial Alcohol, et al.**

No. 5131.

District Court, E. D. New York.

Nov. 14, 1930.

Archer Scherl, of New York City (J. Paul Ratcliffe, of Washington, D. C., of counsel), for complainant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg and Geo. H. Bragdon, Asst. U. S. Attys., both of Brooklyn, N. Y., and John E. O'Neill, Legal Adviser, Treasury Department, of New York City, of counsel), for defendants.

BYERS, District Judge.

The complainant seeks, by this proceeding in equity, to procure an injunction restraining the defendants from in any way interfering with the lawful conduct of his business under his basic permit No. H–21850, and from refusing to approve withdrawal applications under the said permit, and from interfering with the said permit and the obtaining and using of whisky in the manufacture of his preparations.

The permit history is as follows:

Under date of December 29, 1924, permit No. H–21850 seems to have been issued to the complainant to use intoxicating liquor for nonbeverage purposes to the extent of 200 wine gallons of alcohol and 100 wine gallons of whisky per quarter, and accompanying the same there was apparently furnished a bond in the penal sum of $15,000.

Under date of October 11, 1927, an application was filed headed "Supplemental Application for Removal," on form 1404, which form is an application for permit. The recital is that the permittee "makes application for a permit to remove from No. 319 Atlantic Avenue, Brooklyn, N. Y., to No. 444 Tenth Street, Brooklyn, New York," and there was no change in the amount of wine and whisky stated in the application, and the latter was stamped "Approved."

Under date of February 23, 1928, the prohibition administrator advised the Prohibition Commissioner at Washington that the early bond in the sum of $15,000 had been " * * * marked 'Cancelled as to transactions occurring after November 25, 1927,' permit NY–H–21850 having been amended to cover new address at 444—10th Ave. Brooklyn, N. Y.

"Bond Form 1530–A dated October 21, 1927, and effective October 21, 1927, in the penal sum of $5,000 executed by the Independence Indemnity Co., has been filed to cover amended permit at the new address."

It is stated in the defendants' brief that a permit was issued to the complainant as of November 25, 1927, to expire December 31, 1928. No such permit has been produced; nor is reference made thereto in the bill of complaint.

For present purposes, it will be assumed that such a permit was issued, for the reason that as of October 1, 1927, the Regulations No. 2 were effective, section 218 of which provided that all permits then issued and in force should expire on December 31, 1928, unless renewed. In view of that Regulation, it is probable that a new permit was issued which by its terms did expire December 31, 1928.

Complainant's Exhibit 9 in evidence is a copy of a letter, written on behalf of the permittee to the prohibition administrator, in which reference is made to a new bond in the sum of $5,000, to apply to the premises No. 444 Tenth street, Brooklyn, and it will be assumed that such bond was issued and remained in effect until a much later date.

The 1927 permit is said by the defendants to have provided for the annual use by the permittee of 800 wine gallons of alcohol and 400 wine gallons of whisky (the same quantities as are specified in the 1924 permit).

It should be noted that, if a new permit was issued in 1927, it bore the same number as the one issued in 1924, namely, H–21850.

It appears that on December 19, 1928, a hearing was conducted in connection with the permittee's application to renew a permit bearing the above number for the calendar year 1929, and, under date of December 29, 1928, a report was filed disapproving the application for the following reasons:

(a) It appeared that the permittee prior to 1927 asserted that all of his products were sold to a purchaser in Italy having the same family name, and that investigations made through the American consul at Messina disclosed that the barrels which were shipped from this country by the permittee contained, when delivered at Messina, nothing but dirty sea water, and the facts in this connection are well established.

(b) It seems that, as soon as the government undertook its investigations of the foregoing deliveries, the permittee switched his entire business to the Pearl Importing and Exporting House in New Jersey; the products being shipped in barrels according to previous custom.

(c) Apparently the application for 1929 asked the right to use whisky in accordance with the basic permit, the Department having undertaken an investigation, some time prior to the hearing, to determine if alcohol could not be properly substituted for whisky. The evidence submitted on the part of the permittee and in behalf of that aspect of the application was meager and anemic, and the examiner reported not only that the permittee should not be allowed to use whisky, but that his permit for 1929 should not be renewed in any respect.

No action was taken by the permittee to review that decision until the month of July, 1930, a period of seventeen months, when this bill was filed, which is framed upon the theory that the decision of the Supreme Court in the case of Campbell v. Galeno Chemical Co., 281 U. S. 599, 50 S. Ct. 412, 74 L. Ed. 1063, established that the 1924 permit of this complainant did not expire in December, 1928, and consequently, renewal not being required, the proceedings before the administrator were without effect, and that the defendants should be enjoined now from interfering with the 1924 permit.

To sustain that theory, the complainant ignores the permit which the defendants say was issued in October, 1927, and rests his case entirely on the proposition that, in the latter month, he secured an amendment of his 1924 permit respecting the place where his operations were to be conducted, and in all other respects the permit remained in full force and effect.

The complainant appears in a court of equity, asking for equitable relief, and obviously he must assume the task of demonstrating that he is fairly entitled to such. This requirement is one which cannot be overlooked, and is more important than any technical questions concerning the status of the permit.

The nature and character of the permittee's business, as disclosed in the records of the administrator, combined with the permittee's failure to offer any affirmative evidence at the hearing, indicate clearly and unmistakably that the permittee has no standing in a court of equity.

The information which led the administrator to refuse to renew the permit for the year 1929 would be equally persuasive if the 1924 permit were deemed to be in full force and effect at this time, and application were now to be made for withdrawal permits in connection therewith; in other words, the administrator would rest under the duty of refusing such withdrawal permits, in light of the circumstances attending the permittee's previous activities.

Thus it becomes apparent that it is not important to decide the technical question of whether a new permit was issued in 1927, the 1924 permit having first been terminated, and

no opinion is expressed on that aspect of the controversy.

The complainant delayed the present litigation for over a year and a half after the adverse decision rendered by the administrator, and it is quite apparent that the only object which he presently seeks to accomplish is to take possible advantage of the situation created by the decision of the Supreme Court above referred to, and, under all the circumstances revealed by this record, it is not felt that a court of equity should aid him in that effort.

Bill dismissed.