**QUITT v. STONE, Prohibition Administrator, et al. ***

**No. 3089.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 13, 1931.

*Certiorari denied 51 S. Ct. ——, 75 L. Ed. ——.

J. Royall Tippett and Derby A. Lynch, both of Baltimore, Md. (Richard B. Tippett, of Baltimore, Md., on the brief), for appellant.

William C. Purnell, Asst. U. S. Atty., of Baltimore, Md., for appellees.

Before PARKER, Circuit Judge, and SOPER and GLENN, District Judges.

PARKER, Circuit Judge.

This is an appeal from an order of the court below dismissing a bill brought to review the action of the federal prohibition administrator for the Seventh district in refusing to renew a permit for the use of specially denatured alcohol under section 4 of title 2 of the Act of Oct. 28, 1919, c. 85 (27 USCA § 13). The complainant was Dr. Wm. Quitt, a dentist of Baltimore, who is engaged, under the name of the Three Flower Chemical Company in the manufacture of toilet preparations. He held a permit expiring December 31, 1929, authorizing the use of 5,550 gallons of specially denatured alcohol, and had applied for a renewal of the permit for the year 1930. Upon the administrator's refusing the renewal, he filed a bill in the court below to review the administrator's action and to require him to issue the permit. After considering the evidence heard by the commissioner, the court dismissed the bill, and complainant has appealed.

In January 1925, Dr. Quitt obtained a permit authorizing the use of 200 gallons per month of specially denatured alcohol for the purpose of manufacturing toilet waters and perfumes. This amount was increased, upon application, to 400, and later to 550, gallons per month. None of these permits are in the record; and it does not appear whether they were issued for a limited or for an indeterminate period. On August 30, 1928, Dr. Quitt applied for a renewal of the permit in a written application which contained the following stipulation: "This application is submitted with the understanding that the permit applied for must be renewed annually." Pursuant to this application, the prohibition administrator issued a permit which provided that it should be in effect until December 31, 1929, and that the permittee would make further modification of his formula in the event it was found that his preparation was being used contrary to law or regulations. On July 17, 1929, Dr. Quitt applied for a renewal of this permit for the year 1930, but, after some correspondence, the administrator refused to renew it, in a letter dated December 24, 1929, as follows:

"Your application on Form 1479 dated July 17, 1929, for renewal of your permit No. 189 for the ensuing year is hereby disapproved on the following grounds:

"That you have not in good faith complied with the National Prohibition Act, the regulations pursuant thereto nor with the terms of your permit, in that from a thorough investigation made by this office and that of other Prohibition Districts in which you are purported to have disposed of your product, there can be found no proof of legitimate need, use or disposition of your

product as such; that you have disposed of the same under circumstances from which any reasonable person might deduce its intended unlawful use; that all of the purchasers of your product have obstructed the government in its investigation of the ultimate use and disposition thereof, and you failed to show any legitimate use or disposition of such product.

"It is, therefore, concluded that you have promoted the diversion of your product from what would naturally be its regular channels to its redistillation for illegitimate purposes; that you have persisted, notwithstanding many warnings, in the sale of your so-called Rose Extract to such persons or concerns who cannot and will not show any remarketing or disposition thereof as such, or market for your goods; that notwithstanding your promises to co-operate with the government in its effort to prevent the diversion of your product, you, after promising on December 3, 1929, to inform this office, prior to shipment, of the destination of your goods, shipped, without such advance notice, on December 5, 6 and 7, 1929, more than 3600 gallons of your so-called Rose Extract to concerns in Philadelphia, Pennsylvania, which, our investigation discloses, had either unlawfully disposed of the same or refused to show its legitimate disposition and use.

"That you have to date failed to acknowledge receipt of office letter of December 9, 1929, or to comply with requests therein contained.

"That during May or June, 1929, certain checks, ranging in amount from one hundred to four hundred dollars, were found on the premises of an alleged rectifier of illicit spirits, which checks bore your indorsement and that of your brother; that your statements made on or about June 18, 1929, pertaining to these checks are untrue, and that your alleged records surrounding these checks do not prove their validity and are false and fraudulent.

"It is evident, therefore, that you have wilfully and intentionally evaded the law and regulations by surreptitiously shipping your goods to persons whom you had every reason to believe were not legitimately disposing of the same and that, therefore, you are not entitled to the confidence of the government.

"If you desire a hearing in this matter, the same will be granted you upon request.

"A copy of your said application, showing disapproval thereof, is inclosed.

"Yours truly,

"Thos. E. Stone,
"Prohibition Administrator,
"Seventh District."

Upon receipt of this letter, Dr. Quitt filed a bill in the court below to review the action of the administrator and compel the issuance of the permit. The District Judge ruled, however, that he was without power to review the action of the administrator until the latter had accorded petitioner a hearing, and entered an order that a hearing be accorded him. A hearing was accordingly had before a hearer acting under the administrator, who recommended that the permit be not renewed, assigning the following reasons: "First, that there is no legitimate demand for the product manufactured by the complainant and that the demand he has been supplying is not a legitimate demand; second, that the admitted facts in the case cannot be reconciled with good faith as it is contemplated in carrying out the provisions of the National Prohibition Act; third, that the information in the possession of the administrator on December 24th, 1929, was more than sufficient to justify the belief that this product was being diverted to beverage use; fourth, that the permit operation of the complainant is not one that is contemplated by the law and regulations, but is directly contrary to the true intent of the statute, in that the product is not manufactured and prepared for the market as required by section 4, title 2 of the National Prohibition Act and the regulations promulgated thereunder." The findings and recommendations of the hearer were approved by the administrator, and the application for renewal of permit was again denied; whereupon Dr. Quitt filed with the court below another bill, setting forth the proceedings and hearing had before the administrator, praying that his action be reviewed and that he be directed to renew the permit for the year 1930.

The case was heard upon the evidence adduced before the hearer. To state even the substance of the evidence would prolong this opinion beyond all reasonable lengths. It is sufficient to say that it showed beyond question that Dr. Quitt was not engaged in the manufacture of any toilet preparation which was sold or offered to the public, but that the only manufacturing which he did was to mix certain oils with specially denatured alcohol, resulting in a product which he called "Rose Extract." This product he sold in bulk to three or four customers, who claimed that they used it for manufacturing other products. These customers had not been granted permits for the use of alcohol in manufacturing; and, from the evidence, it is very doubtful whether they could have obtained permits. The oil which Dr. Quitt added to the denatured alcohol appears to have imparted

no value to it for the purposes for which it was used by his customers; and the conclusion is inescapable that they purchased from him, either because they could not obtain permits themselves, or because they did not wish to subject their businesses to the supervision which the obtaining of permits would entail. With reference to this, the learned Judge below thus summarized the evidence:

"Not only is it uncontradicted that the complainant does not intend himself to manufacture and place upon the market any of these products as such, but it is an equally undisputed fact that his entire output, namely 70,000 gallons annually, is sold to some three or four customers admittedly not to be marketed by them as these various toilet water or hair tonic preparations, none of which is now to be found on the market as such, but to be used as a base for the manufacture of other preparations. In turn, these middlemen themselves employ others to do such other manufacturing, and in this manner they enable the chain to be indefinitely extended, until it is entirely possible, if not indeed probable, that the tracing of the actual ultimate disposition of the denatured alcohol, in whatever form, becomes incapable of accomplishment."

The judge found that the administrator was justified in refusing to renew the permit, and dismissed the bill. Shortly thereafter the Supreme Court decided the cases of Campbell v. Galeno Chemical Co., 281 U. S. 599, 50 S. Ct. 412, 74 L. Ed. 1063, and Campbell v. W. H. Long & Co., 281 U. S. 610, 50 S. Ct. 415, 74 L. Ed. 1070, and complainant petitioned for what was in effect a rehearing in order that the court might give effect to the principles embodied in these decisions. The Judge held, however, that they had no application to the questions involved here, and denied the petition. Complainant thereupon appealed to this court.

We think that there can be no question that the decision below was correct. Whether a permit should be granted or renewed is a matter committed by the statute to the discretion of the prohibition administrator; and, in providing that an adverse decision of the administrator might be reviewed in a court of equity, it was not intended to vest that court with the administrative function of determining whether the permit should or should not be granted, but merely with the judicial power of determining whether, upon the facts and law, the action of the administrator was based upon error of law, was wholly unsupported by evidence, or

was clearly arbitrary or capricious. Ma-King Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046; Silberschein v. U. S., 266 U. S. 221, 45 S. Ct. 69, 69 L. Ed. 256; Herbert v. Anstine (C. C. A. 4th) 37 F.(2d) 552; Blair v. Graupner (C. C. A. 3d) 29 F. (2d) 815; Yudelson v. Andrews (C. C. A. 3d) 25 F.(2d) 80.

Upon this record, we do not think that it can be said that the action of the administrator was contrary to law, that it lacked support in the evidence, or that it was arbitrary or capricious. Aside from the testimony of the difficulty experienced in tracing the disposition by complainant's customers of the product shipped to them, giving rise to a well-grounded suspicion that it was being illegally diverted, and apart from the evidence of the finding of checks showing payments to complainant by an alleged violator of the prohibition laws, the evidence as to the nature of complainant's business clearly justified the administrator in refusing the renewal of his permit.

The law contemplates that permits shall be issued to those who are themselves engaged in manufacturing, not to those who merely obtain alcohol to sell to others to be used by them for that purpose. The fact that complainant adds a small quantity of oil to the drums of specially denatured alcohol which he receives, and which he then reships without further change or addition, is not sufficient to constitute him one "who manufactures" within the meaning of the act. A manufacturer is one who is engaged in working raw materials into wares suitable for use (Black's Law Dictionary, 751); and it is clear that complainant is not in good faith so engaged. None of his product is used by or sold to the public as such; and what he does to the denatured alcohol might very well be done by those to whom he sells it and at less expense. It is a legitimate inference from the testimony that the purpose of complainant is not to engage in the manufacture of articles of commerce, but to subject the specially denatured alcohol to treatment more or less unimportant so that he may have some basis for an application for a permit, and that those who purchase it from him care only for the alcoholic content and little or nothing for the oil which he adds. Without intimating that they are engaged in unlawful rectifying, it is clear that the entire purpose of regulation through permits will be defeated if the regulations requiring permits of manufacturers using alcohol may be evaded in this way.

■ We do not, of course, mean to say that, to obtain a permit, a manufacturer must himself put the goods in the final form in which they are offered to the retail trade. It is, no doubt, sufficient to entitle him to a permit that what he does is one of the steps in the manufacture of the final product. What we do mean to say, is that what he does must be a real part of the process of manufacture, not a mere colorable device by which the regulations of the government may be evaded. Upon the evidence here, we think that the administrator was justified in concluding that complainant's business was no more than such a device, and in refusing, for that reason, to issue a renewal of his permit as a manufacturer. It was not necessary to justify a refusal to renew the permit that complainant had knowledge that his product was being unlawfully diverted by those to whom he sold it. It was sufficient to justify the refusal that his business was enabling those who used alcohol in manufacturing to evade the statute and the regulations requiring them to obtain permits.

■ And we agree with the court below that the decisions in the Campbell Cases, 281 U. S. 599 and 610, 50 S. Ct. 412, 415, 417, 74 L. Ed. 1063, 1070, have no application here. The point decided by them upon which complainant relies is that a permit, providing that it should be in force "until surrendered by the holder or canceled by the Commissioner of Internal Revenue for violation of the national prohibition act or regulations made pursuant thereto," could not be terminated, without hearing, by a general regulation providing that all such permits should expire on a date named. The court did not decide that, where a permit has been issued for a limited period, the permittee is entitled as a matter of right to a renewal. Whether the administrator may issue a permit for a limited period, or whether a permittee who accepts a renewal of a permit for a limited period is bound by its limitations, it is not necessary for us to decide [but see Kernan v. Campbell (D. C.) 36 F.(2d) 778; Id. (C. C. A. 2d) 36 F.(2d) 779, and Greenberg v. Doran (D. C.) 42 F.(2d) 507]; for complainant is making application for a renewal, which is an application for another permit. By this application the discretion of the administrator is invoked, and, as we have seen, there is no ground to justify our interfering with the exercise of that discretion.

■ It is contended that the refusal to issue a new permit amounts to a revocation of the old, and that upon the record such revocation was not justified. We cannot agree with this contention. Assuming that the refusal to renew the permit under the existing circumstances was in effect a revocation, we do not think that there is anything in the record to justify our interfering with the discretion of the administrator in exercising this power. The statute provides for revocation, after notice and hearing, where the permittee is not in good faith conforming with the provisions of the act. National Prohibition Act, tit. 2, § 9 (27 USCA § 21). One of the provisions of the act is that to obtain a permit the applicant must be engaged in the manufacture of the goods specified therein; and, as we have seen, complainant here is not in good faith so engaged. Complainant was accorded a full hearing upon notice; and, if the refusal to renew be construed as a revocation, it was an exercise of discretion vested in the administrator, which, as it was not arbitrary or capricious, involved no error of law, and had support in the testimony, we have no power to control. Herbert v. Anstine, supra; Stein v. Andrews (C. C. A. 3d) 25 F.(2d) 281, 282.

The decree dismissing the bill will be affirmed.

Affirmed.