Henry H. FARMER,

v.

The UNITED STATES.

No. 327–84C.

United States Claims Court.

April 16, 1986.

McDonald Yawn, Memphis, Tenn., for plaintiff.

Sara V. Greenberg, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

SETO, Judge.

In this action, plaintiff seeks a refund of the annuity payments withheld from his salary under 5 U.S.C. § 8344(a) during his reemployment with the Federal Aviation Administration. Plaintiff, a retired civil service annuitant, claims that because he was rehired as a Flight Data Communications Specialist following the 1981 air traffic controllers' strike to perform duties in the operation of the air traffic control system, he is entitled to the benefit of the "no annuity offset" provision of 5 U.S.C. § 8344. For the reasons stated below, plaintiff's cross-motion for summary judgment is granted and judgment shall be entered for plaintiff.[1]

## BACKGROUND

Following a strike by approximately 11,400 members of the Professional Air Traffic Controllers Organization (PATCO) on August 3, 1981, President Reagan terminated the striking controllers' employment. To mitigate the burden caused by the PATCO strike on the air traffic control system, the Federal Aviation Administration (FAA) hired former employees with appropriate experience to perform air traffic control duties. Plaintiff, Henry Farmer, a retired FAA employee with 31 years experience as an Air Traffic Control Specialist (GS–2152 series) and Supervisory Flight Data Aid (GS–301 series), was appointed on August 13, 1981 to a position as a flight data communications specialist (GS–301) for a period of two years.

During his reemployment with the FAA, plaintiff's salary was reduced by the amount of his civil service retirement annuity pursuant to 5 U.S.C. § 8344(a) (1980 & Supp.1986). On October 2, 1982, however, Congress enacted Pub.L. No. 97–276, 96 Stat. 1200, which provides at Section 151(g)[2] that certain reemployed annuitants are exempt from the § 8344(a) deductions provided they were employed "to perform

---

1. Although not denominated as such, plaintiff's opposition to defendant's motion for summary judgment shall be treated as a cross-motion for summary judgment inasmuch as plaintiff requests that summary judgment be entered in his favor and establishes that there exist no genuine issues of material fact. *See Standard Oil Co. v. United States,* 231 Ct.Cl. 112, 127, 685 F.2d 1337, 1346 (1982).

2. Sections 151(a)-(h) are generally referred to as the Air Traffic Control Revitalization Act (Act).

duties in the operation of the air traffic control system or to train other individuals to perform such duties." Pub.L. No. 97–276, § 151(g), *codified at* 5 U.S.C. § 8344(h)(1) (Supp.1986). To implement this legislation, the FAA issued Order 3550.13 which provides the following guidelines with respect to reemployed annuitants at Section 4a(7):

(a) A GS–2152 employee serving as a reemployed annuitant, who applied for retirement or retired prior to August 3, 1981, and performs duties in the operation of the air traffic control system at an air traffic control center or terminal, or trains other individuals to perform such duties, shall not have his/her salary reduced by the amount of his/her annuity.

(b) This provision is retroactive to August 3, 1981 and ends December. 31, 1984, unless the Administrator, prior to that date, determines there is no longer a critical shortage of controllers.

(c) To be eligible for no annuity offset, the reemployed annuitant must be performing covered duties at an air traffic control center or terminal or training other individuals to perform such duties. Eligibility ceases if the reemployed annuitant is assigned to perform noncovered duties. Similarly, an otherwise eligible [sic] reemployed annuitant becomes eligible for no annuity offset when assigned covered duties.

In response to plaintiff's inquiry following the expiration of his temporary appointment, the FAA determined that Mr. Farmer was not eligible under 5 U.S.C. § 8344(h) to receive the amount of the annuity withheld from his salary. Relying on Order 3550.13, the FAA explained that because plaintiff had been employed as a GS–301 Flight Data Communications Specialist and not a GS–2152 Air Traffic Control Specialist, his position did not fall within the purview of the legislation. In filing this action, plaintiff challenges the FAA's interpretation and seeks reimbursement of the annuity deductions from his salary in the amount of $24,283.20.

## DISCUSSION

The question before the court is whether plaintiff falls within the ambit of the "no annuity offset" provision of 5 U.S.C. § 8344. In particular, the court must determine whether plaintiff, as a GS–301 Flight Data Communications Specialist, performed "duties in the operation of the air traffic control system or ... train[ed] other individuals to perform such duties." 5 U.S.C. § 8344(h)(1). Defendant contends that the financial incentives of the legislation were to be provided only to GS–2152 Air Traffic Control Specialists directly involved in the operation of the air traffic control system, and not to individuals such as Mr. Farmer who performed "support duties". In support of its contention that the FAA properly interpreted 5 U.S.C. § 8344(h) in its implementing order of October 25, 1982, however, defendant relies on a narrow reading of both the statutory language and the legislative history.

In interpreting the statutory language, the court accepts the proclamation in *Benton v. United States*, 203 Ct.Cl. 263, 269, 488 F.2d 1017, 1020 (1973), that absent an apparent ambiguity, "the ordinary and commonly understood meaning shall be attributed to the terms employed in the statute, unless a contrary meaning is clearly intended." The government contends that the plain language of the "no annuity offset" provision, 5 U.S.C. § 8344(h), exempts only annuitants reemployed as air traffic controllers (GS–2152) from annuity offsets. This argument is without merit, however, because it promotes a construction which impermissibly circumscribes the broad language of the statute.

The "no annuity offset" provision applies to all annuitants who "perform duties in the operation of the air traffic control system or ... train other individuals to perform such duties." 5 U.S.C. § 8344(h)(1). The "air traffic control system", however, comprises more than just air traffic controllers. Had the legislature wished to limit applicability of the "no annuity offset" provision solely to controllers or to employ-

ees with a particular classification, it could have done so explicitly. Indeed, Sections 151(c), (d) of the Act, codified at 5 U.S.C. § 5546a, enumerate those employees, including "air traffic controllers", to whom the FAA may pay premium wages. Because the "no annuity offset" provision does not specify those employees to whom it applies, its language evidences Congressional intent to include a wide range of employees within its ambit.

The legislative history of the Act further supports the court's interpretation. As the Court of Claims noted in *Akins v. United States*, 194 Ct.Cl. 477, 483, 439 F.2d 175, 177 (1971), "[a] statute cannot be divorced from the circumstances existing at the time it was passed...." In passing the Act, Congress wished to provide special incentives to facilitate FAA's efforts to rebuild its air traffic control system. S.Rep. No. 386, 97th Cong., 2d Sess. 2–3 (1982). While certain provisions of the Act were directed explicitly toward air traffic controllers, the bill as a whole, including the "no annuity offset" provision of § 151(g), applies to key FAA employees necessary to the operation and maintenance of the air traffic system. *Id.* As the Senate Report notes, "the operation of the air traffic system [following the strike] clearly reflects both the substantial preparations undertaken by the FAA before the strike, and the dedication of the controllers *and staff personnel* who remained on their jobs." *Id.* at 2 (emphasis added). Thus, the statutory language, together with its legislative history, compels the court to look to the nature of the duties performed by an employee, and not his particular job classification, in defining the scope of the "no annuity offset" provision.

As a reemployed annuitant with substantial experience as a GS–2152 Air Traffic Control Specialist, plaintiff performed the following duties during the two years he held his position as a Flight Data Communications Specialist: (1) processing flight progress strips; (2) making entries into the air traffic control computer system; (3) receiving and distributing weather information; (4) receiving and transferring flight data from and to other air traffic control facilities; (5) updating and sequencing flight progress strips; and (6) occasionally providing instruction concerning the listed duties. *See* Complaint ¶ 5. It is clear that these duties are vital to the successful operation and maintenance of the air traffic control system and thus are an integral part of that system. *See* Affidavit of Ralph Grayson, Appendix to plaintiff's brief. Indeed, in its letter of September 27, 1983 denying plaintiff's request for his withheld annuity payments, the FAA recognized "the overall importance of [plaintiff's] position in the operation of the air traffic control system" and noted that it "would have been impossible to operate the system without such support positions as [plaintiff's]." Appendix to Defendant's Motion for Summary Judgment at 30. Moreover, plaintiff establishes, through affidavit evidence from GS–2152 Air Traffic Control Specialists with whom he worked, that the duties he performed as a GS–301 ordinarily were performed by GS–2152 employees. Because plaintiff performed covered duties in the operation of the air traffic control system, the court finds that he is entitled to the benefit of the "no annuity offset" provision of the Act, 5 U.S.C. § 8344(h).

In holding for plaintiff, the court concludes that the FAA impermissibly circumscribed the intended scope of the "no annuity offset" provision by limiting its applicability to GS–2152 employees. The court acknowledges that construction of a statute by officials charged with its interpretation is entitled to deference by the courts and ordinarily should be affirmed if it has a reasonable basis. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *NLRB v. Hearst Publications, Inc.*, 322 U.S. 111, 131, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944). This deference is constrained, however, by the courts' role as the final authority on issues of statutory construction. *Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1978); *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 385,

85 S.Ct. 1035, 1042, 13 L.Ed.2d 904 (1965). Therefore, the courts are not obliged to affirm an administrative interpretation which they deem inconsistent with a statutory mandate or which frustrates the congressional policy underlying a statute. *Volkswagenwerk Ak. v. Federal Maritime Commission*, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968); *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965).

Although Order 3550.13 establishes the nature of the duties performed as the controlling factor in determining eligibility under the "no annuity offset" provision, *see* paragraph 4a(7)(c), it falls short of fully implementing the statutory language by failing to recognize the important role of other than GS–2152 employees. Thus, under the FAA's interpretation, a former GS–2152 employee reemployed in the GS–301 series but performing work vital to the operation of the air traffic control system would not be entitled to the statutory benefit. Order 3550.13 therefore is inconsistent with the purpose of Section 8344(h) and cannot govern its implementation. Indeed, it is axiomatic that an administrative agency may not, under the guise of construction, restrict the meaning of a statute. *Helvering v. Powers*, 293 U.S. 214, 224, 55 S.Ct. 171, 173, 79 L.Ed. 291 (1934); *Campbell v. Galeno Chemical Co.*, 281 U.S. 599, 610, 50 S.Ct. 412, 415, 74 L.Ed. 1063 (1930).

## CONCLUSION

Accordingly, as a civil service annuitant who was reemployed by the FAA in an effort to ameliorate the impact of the 1981 air traffic controllers' strike and who performed duties in the operation of the air traffic control system, plaintiff is entitled to recover the annuity payments withheld from his salary. Therefore, plaintiff's cross-motion for summary judgment of April 17, 1985 is GRANTED and judgment shall be entered for plaintiff in the amount of $24,283.20. Costs to the prevailing party.