## BAY STATE DISTRIBUTING CORPORATION v. DORAN, Commissioner of Prohibition, et al.

District Court, D. Massachusetts. July 8, 1929.

No. 3077.

George H. McDermott, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and Elihu D. Stone, Asst. U. S. Atty., both of Boston, Mass., for defendants.

MORTON, District Judge. This is a proceeding in equity to review the revocation of the plaintiff's permit as a manufacturer of denatured alcohol. The suit is brought under title 2, section 9, of the National Prohibition Act (27 USCA § 21), and is governed by section 5 (section 14), which provides that "the Court may affirm, modify, or reverse the finding of the Commissioner as the facts and law of the case may warrant." The matter has been heard without objection by either party on the transcript of the evidence taken before the hearing officer.

Proceedings for the revocation of a permit may be begun before the Commissioner by a sworn complaint of a third person, or instituted by the commissioner himself if he "has reason to believe, that [the permittee] is not in good faith conforming to the provisions of the Act," etc. Section 9. In the first case a copy of the complaint must be served on the permittee with the citation for hearing; in the second, the citation must be accompanied by "a statement of the facts constituting the violation charged." The proceedings against this plaintiff were initiated under date of July 6, 1928, by the Prohibition *Administrator*; and the order revoking the permit was signed by him. A statement of the charges was duly served. They were in substance (1) that the permittee "did in bad faith * * * unlawfully and willfully and with intent to deceive fail to furnish the Commissioner a true list of the names of your stockholders, on being requested to do so by said Commissioner"; and (2) that it "did fraudulently obtain the approval of the Prohibition Administrator" to a continuance of the original permit and to two amendments thereof, by representing "that Daniel A. Sullivan treasurer of the Bay State Distributing Corporation controlled said Bay State Distributing Corporation, although at that time and at all times thereafter, you knew that the controlling shares of the capital stock of (said corporation) merely stood in the name of Daniel A. Sullivan, trustee," etc. There is doubt, in view of the explicit language of the statute, whether the Prohibition Administrator had power to act in the premises; but as his findings must be set aside on other grounds, I pass this question.

The evidence did not support the first charge, it not being shown that the plaintiff was requested to furnish, or undertook to furnish, a list of its stockholders. The administrator's action rests on the second charge only. The finding on which it was based was as follows:

"I, therefore, find there is evidence of bad faith in that the permit in question was continued in force by subterfuge or deceit or due to the fact that full particulars relative to the controlling ownership of the business were withheld from the former Administrator, and if such information had been forthcoming permit privileges would have been discontinued.

"I regard the testimony as showing sufficient evidence of bad faith to sustain the charges and to justify the recommendation that the permit be revoked and I do so recommend."

It is doubtful whether these findings are sufficient to support the action taken; but this question also I pass without deciding it, preferring to rest my conclusion on other grounds.

The act recognizes that alcohol for industrial uses is necessary, that substantial amounts of capital would naturally be invested in manufacturing it for such purposes, and that the persons who embark in that business ought to be protected against arbitrary or unjustified revocation of the permit on which it depends. The grounds upon which a permit may be revoked are, therefore, clearly stated in the act, viz., that the permittee "is not in good faith conforming to the provisions of this Act, or has violated the laws of any state relating to intoxicating liquor." Title 2, § 9. In this case there were no charges that the permittee violated the provisions of the act or of any state law; the evidence does not indicate any ground of suspicion, even, that such was the fact; and there is no finding that the permittee had been guilty of such violations. The charge on which the revocation is based is, if maintainable at all, extremely technical;

i. e., it does not involve any illegality on the part of the plaintiff.

There was no dispute about the basic facts. The permittee is a Massachusetts corporation. The majority of its stock stood on its books in the names of "Daniel A. Sullivan," and "Daniel A. Sullivan, Trustee." The hearing officer has found that the Prohibition Administrator asked Mr. Sullivan who controlled the corporation; that Mr. Sullivan replied that he did; and that this statement was intentionally false and deceptive. This was the ground on which the permit was revoked; the Commissioner taking the view that the corporation was controlled by the persons for whom Sullivan was acting as trustee, and that therefore Sullivan's statement that he controlled it was willfully false.

As charged, the alleged false statement was made orally to Mr. Parker when he was Federal Prohibition Administrator during an interview with Mr. Sullivan about $3\frac{1}{2}$ years ago. Mr. Parker's recollection of the talk was admittedly hazy:

"There was a change of ownership or something of that kind."

"I cannot remember the actual words."

"Mr. Sullivan assured me that he was the owner or had the controlling interest. That is all I can remember of it.

"Q. That he held the controlling stock in the Bay State Distributing Corporation? A. Yes. That is the way I remember the situation."

"Q. Did that conversation with Mr. Sullivan go as far as the question of whether or not this stock Mr. Sullivan held was held by him as trustee? A. I don't know that that actual question was asked, but my understanding was that it was not held as trustee."

"Q. • • • Did Mr. Sullivan suggest in that conversation that he held this controlling stock of the Bay State Distributing Corporation as trustee for unknown beneficiaries? A. No."

Mr. Parker further testified that if he had known that Sullivan held stock in trust and did not know the owners of the stock, he would not have issued the permit nor approved the other matters mentioned in the charges. On cross-examination he said, "It was a conversation about stockholders, and it is very hazy in my mind about what was said. It is in my mind that Mr. Sullivan told me he was the principal stockholder and there were other stockholders." "I do not remember whether I called for a list of stock-

holders or not, but I think I did." Mr. Sullivan on his side testified that he had no recollection of anything being said about who owned the controlling stock; that "Mr. Parker never asked me a question along this line," i. e., about the persons with whom he was associated; that he felt he controlled the corporation; that he never received any notice or request for a list of stockholders.

The stock book of the corporation was correctly kept, and showed the stock ownership as Sullivan stated it. It was at all times open to examination by the prohibition authorities; and it was examined by them several times. No objection was made to the way in which the stock stood. Certain agents testified that on one occasion Sullivan said to them that he was trustee for himself, whereas he later admitted that he was trustee for other persons whom he declined to name, although he did name their counsel with whom alone he had had dealings. Sullivan explained, however, that he went in as treasurer under an arrangement whereby he was to have the right to purchase the corporation if it proved successful under his management. He admitted that the stock certificates of the trust stock were not in his possession. But that fact did not affect his right to vote upon it.

The Prohibition Administrator, in refusing to set aside the findings of the hearing officer that the plaintiff had been guilty of willful deception as to the persons who controlled it, said in his decision: "Were I to set aside the findings of the hearing officer, I would not only be overturning findings amply justified by the evidence, but I would also be disregarding the present policy of the Commissioner of Prohibition." The permittee was entitled to have the facts found according to the charges and the evidence against it, regardless of the present policy of the Commissioner of Prohibition. The Prohibition Administrator's attitude was indefensible and so unfair as to deprive his conclusions of any weight.

If Sullivan was asked who controlled the corporation, in my opinion he answered correctly in saying that he did. Enormous amounts of corporate stock in the aggregate are held by trustees. The law regards them for all legal purposes as stockholders of the corporation. They vote the stock and exercise all rights belonging to stockholders. If they happen to own a majority of the stock, they control the corporation. The contrary view, on which the action of the Administrator rests, involves a fundamental

error in law. The evidence did not warrant a finding that Sullivan's statement was false; and the findings of the Administrator must be set aside as unjustified by the evidence and unwarranted in law. If the word "control" was used, in the interview with Sullivan, in a broader sense than its ordinary usage, the evidence ought to show that the unusual meaning was clearly conveyed to him.

The conversations on which these charges rest were more than three years old when the charges were first made, and the delay is wholly unexplained. A matter of such importance should not be left to hazy recollections of long past talk; such evidence is not convincing. The inquiry ought to have been put into writing if it was to afford a basis for action; and in justice to the permittee action ought to have been taken promptly.

There remains the question in what form the plaintiff's relief should be granted. It is said for the defendant that by a general order of the Commissioner all such permits were caused to expire on December 31, 1928; that the court is without authority to direct the issuing of a new permit; and that therefore no relief can be granted. In Higgins v. Foster, 12 F.(2d) 646 (C. C. A. 2d), it was held that a permit once granted could not be terminated except in the manner provided in the act. The statutory provisions on which that conclusion rests are fully discussed in the opinion. It may perhaps be added that the act, as has been suggested, shows a distinct purpose to protect persons who go into the legitimate and necessary business of manufacturing alcohol for industrial purposes, by assuring a judicial review of action by the department revocating their permit. In Rock v. Blair (D. C.) 13 F.(2d) 1005, Judge Augustus Hand held that permits incidental to the basic permit could not be arbitrarily refused while the basic permit remained in force. He accordingly enjoined the denial of withdrawal permits. See, too, Casper v. Doran (D. C.) 30 F.(2d) 400.

There must be a decree setting aside the revocation of the permit and restoring it in force. I do not think I ought to assume that the Commissioner will not deal fairly with the plaintiff in the matter of withdrawal permit and other permits incidental to the business authorized by the basic permit. I shall therefore make no further order at the present time. But the case may stand open with leave to the plaintiff to apply for further relief if necessary.