DE LUCA v. STONE, Supervisor of Permits.
No. 1770.

District Court, D. Maryland.
Dec. 9, 1930.

Abraham Davidson, of Baltimore, Md., for complainant.

William C. Purnell, Asst. U. S. Atty., of Baltimore, Md., for respondent.

WILLIAM C. COLEMAN, District Judge.

This case arises upon a bill to review the action of the local Prohibition Administrator in revoking complainant's permit, dated May 18, 1929, to withdraw specially denatured alcohol in quantities not to exceed four hundred wine gallons per thirty day period, for use in the manufacture of hair tonic and toilet preparations.

The bill was filed pursuant to section 9 of title 2 of the National Prohibition Act (27 USCA § 21). In accordance with the provisions of the same section, complainant, on July 23, 1929, was cited to appear before the local Commissioner and was granted a hearing on twenty-six charges, alleging various violations of the law, of the regulations issued thereunder and of the provisions of the permit itself, claimed to have been for the most part in the nature of intentional, unlawful, diversion of the alcohol. After a hearing, at which witnesses were produced by the government, but none by complainant, the hearer found that all of the charges, as set forth in the citation, with the exception of one (with which we are not now concerned), were substantiated, and that complainant, by his acts, showed a "disregard of the responsibilities imposed upon him as a permittee, and has not in good faith conformed to the provisions of his permit, the National Prohibition Act, the Act supplementary thereto and the regulations of the Treasury Department promulgated thereunder." The hearer thereupon recommended that the permit be revoked, and the local Administrator adopted the recommendation. Complainant then sought and obtained a review of the Administrator's action in a hearing before the local Board of Review. At this hearing the additional testimony of five customers of complainant, and also some new documentary evidence, were received on the representations of complainant that this evidence could not be produced at the first hearing. After considering this new evidence, together with the original record in the case, the Board of Review recommended that the order of revocation be affirmed, which was accordingly done.

We are now concerned with only one of the numerous charges which form the basis of the Administrator's action, because in the proceedings before this court the government has abandoned all but one charge, namely, complainant's "failure to keep true and accurate records, accounts and reports of the names and addresses of persons to whom products alleged to have been manufactured under permit, were sold."

█ Regulations prescribed by the Bureau of Prohibition, approved by the Secretary of the Treasury, and not transcending the authority given by the National Prohibition Act, have the force and effect of law. Shapiro v. Lyle (D. C.) 30 F.(2d) 971. The regulation upon which the government here relies is as follows, particularly paragraphs 3 and 4 (article 114 of Regulations No. 3, August, 1927, Revision):

"Persons holding permits to use specially denatured alcohol in excess of 100 wine gallons per quarter must keep a permanent record showing the following data:

"(1) Amount of each formula of denatured alcohol received, the date and hour of receipt if delivered by truck, and the serial numbers of the packages.

"(2) Amount of denatured alcohol of each formula on hand at all times.

"(3) Names of products in which each formula of denatured alcohol is used.

"(4) Number of gallons, or amount otherwise expressed, of each separate product manufactured, together with the names and addresses of persons to whom such products are sold and delivered.

"Such records must be kept complete and up to date, and must at all times during regular business hours be open to inspection·by Government officers. No particular form of record will be prescribed, but the data herein indicated must be ascertainable from the records and invoices kept by the manufacturer."

█ Title 2, § 9, of the National Prohibition Act (27 USCA § 21), provides that, "if the commissioner has reason to believe, that any person who has a permit is not in good faith conforming to the provisions of this chapter," he shall issue a citation which is to be followed by hearing. If it be found that the permittee " * * * has not in good faith conformed to the provisions of this chapter, such permit shall be revoked. * * * " While the burden of proof is upon the government, it is not necessary that the government shall, by direct proof, establish bad faith on the permittee's part. Lack of good faith may be shown by circumstantial evidence to be the fair inference from the methods adopted by the permittee in carrying on his business, and may be established as well by proof of omission to do certain things, as

by proof of acts of commission. Burns v. Doran (C. C. A.) 37 F.(2d) 484.

■■■ Before this court may disturb the findings of the local Administrator, it must be apparent that either an error of law was committed by him, or that his findings were wholly unsupported by evidence, or that what he did was purely arbitrary or capricious. Ma-King Products Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046; Herbert v. Anstine (C. C. A.) 37 F.(2d) 552. The regulation above quoted is in entire conformity with the provisions of section 10 of title 2 of the Act (27 USCA § 22). See U. S. v. Katz, 271 U. S. 354, 46 S. Ct. 513, 70 L. Ed. 986. The local Administrator found that complainant was not complying with this regulation, in that at the time of the original hearing, and with the aid of all available books of account, sales, slips, other documentary evidence, and verbal testimony from customers and others, it was not possible to account for numerous wide discrepancies between the amount of alcohol released under the permit, and the amount of the finished product claimed to have been manufactured and sold. The Board of Review affirmed this finding after it had the benefit of the additional testimony of other customers of complainant, and also additional sales slips which were not submitted at the first hearing. The Board found that, if this additional evidence be taken at its full face value, then all shortages were accounted for. But in spite of this fact, the Board found that the original hearer was correct in his conclusion.

As has just been pointed out, the provision for review of an adverse decision by the Commissioner does not vest in this court the administrative function of determining whether or not the permit should be granted, but merely whether, upon the facts and the law, the action of the Commissioner, or of his accredited subordinates, is based upon an error of law, or is wholly unsupported by the evidence, or is purely arbitrary or capricious. In other words, the discretion of the court, in a proceeding of this kind, cannot be substituted for their discretion. The sole question is whether the Administrator in the present case has abused the exercise of his discretion. That he has not done so is clear from an examination of the testimony.

At the time complainant was charged with dereliction in his methods of keeping his records and accounts of goods manufactured and sold, he sought to absolve himself by piecemeal methods, through sources in many cases not entitled to be relied upon. But taking all of this subsequent evidence into consideration and giving complainant, as did the local Administrator, full credit for the same, after tedious rechecking of all the fragmentary evidence, the conclusion is inescapable that the methods employed by the complainant in the distribution of his products evidence such laxity as can only spell intentional disregard of the legal requirements, from which it necessarily follows that lack of good faith must be inferred. The lack of requisite detailed information covering disposition of complainant's products is too substantial to denote mere negligence or innocent mistake. In some instances, the best evidence obtainable was sales slips, which failed to give the full names or the addresses of the ostensible purchasers; in other instances, the verbal statements of customers, which first disagreed with complainant's documentary evidence, but which were subsequently changed.

■ The Administrator's investigations covered a period of two and one-half years, from December, 1926, to May, 1929. Although it appears that complainant had been granted similar permits since 1921, the irregularities now complained of do not appear to have been made the subject of any similar prior investigation—a fact which remains unexplained on the record. But assuming, without deciding, that the government was guilty of laches in this respect, and assuming further that the record lacks sufficient proof—as the government now admits by its abandonment of the other findings of the local Administrator—of actual diversion of any of the alcohol to forbidden uses, such cannot release complainant from liability for his failure to have his records comply with the legal requirements. Such failure alone, under the given circumstances, is ample justification for revocation of the permit. As the Supreme Court said in Ma-King Products Co. v. Blair, supra, in reference to refusal to grant a permit, the discretion of the Commissioner being governed by the same principle whether he is dealing with original issuance or revocation (page 482 of 271 U. S., 46 S. Ct. 544, 545):

"It is clear that the Act does not impose on the Commissioner the mere ministerial duty of issuing a permit to any one making an application on the prescribed form, but, on the contrary, places upon him, as the administrative officer directly charged with the enforcement of the law, a responsibility in the matter of granting the privilege of dealing in liquor for nonbeverage purposes,

which requires him to refuse a permit to one who is not a suitable person to be entrusted, in a relation of such confidence, with the possession of liquor susceptible of diversion to beverage uses.

"The dominant purpose of the Act is to prevent the use of intoxicating liquor as a beverage, and all its provisions are to be liberally construed to that end. It does not provide that the Commissioner shall issue any liquor permit, but merely that he may do so. It specifically requires the application to show 'the qualification of the applicant,' and authorizes the Commissioner to prescribe, 'the facts to be set forth therein.' These provisions, as well as the purpose of the Act, are entirely inconsistent with any intention on the part of Congress that the Commissioner should perform the merely perfunctory duty of granting a permit, to any and every applicant, without reference to his qualification and fitness; and they necessarily imply that, in order to prevent violations of the Act he shall, before granting a permit, determine, in the exercise of his sound discretion, whether the applicant is a fit person to be entrusted with such a privilege."

See, also, Kaliner v. Blair (C. C. A.) 26 F.(2d) 46; Quitt v. Stone (D. C.) 39 F.(2d) 219.

For the reasons above stated, the action of the local Administrator in revoking complainant's permit is found to have been entirely justified on the testimony before him, and accordingly the bill of complaint will be dismissed.