### MEINWALD v. DORAN, Commissioner of Industrial Alcohol, et al.

#### No. 6003.

District Court, E. D. New York.

June 4, 1932.

Habeeb Abokair, of Brooklyn, N. Y., for plaintiff.

Howard W. Ameli, U. S. Atty., and George H. Bragdon, Asst. U. S. Atty., both of Brooklyn, N. Y. (John E. O'Neill, Senior Attorney, Bureau of Industrial Alcohol, of New York City, of counsel), for the United States.

CAMPBELL, District Judge.

This is a suit in equity brought by the plaintiff on two alleged causes of action.

262

In the first cause of action, plaintiff complains of the revocation of his permit I— 9412, and seeks a review thereof under sections 5 and 9, title 2, of the National Prohibition Act (27 USCA §§ 14, 21).

In the second cause of action, the plaintiff complains of the defendants' action in refusing to issue to the plaintiff a permit for the year 1932, and seeks a review of such refusal pursuant to the provisions of sections 5 and 6, title 2, of the National Prohibition Act (27 USCA §§ 14, 16).

From July 24, 1925, up to November 8, 1931, plaintiff held a permit authorizing him to obtain 80 wine gallons of alcohol, and 240 wine gallons of whisky, to use same in connection with his drug store at premises 7302 Eighteenth avenue, Brooklyn, N. Y.

On or about November 8, 1931, plaintiff was served with a citation charging: "1. During the period of five years prior to July 15, 1931 or thereabouts, illegally purchased and procured prescriptions for intoxicating liquors, forms 1403, from Dr. Isaac Levine, 1219 49th St., Brooklyn, N. Y., and Dr. Samuel Schwartz, 1620 Ocean Ave., Brooklyn, N. Y., which prescriptions were fraudulently cancelled by you and filed to account for the disposition of liquors procured by you under your permit."

On the 27th day of November, 1931, a hearing was held upon said citation, in the office of the Federal Prohibition Administrator for this district, before one of the hearers, Ovid Jones, a stenographic record of said hearing was made, and thereafter, upon said record, the said hearer, Ovid Jones, made a conclusion in the words of the charge in said citation.

Thereafter, and on December 23, 1931, the defendant William D. Moss approved the above conclusion and revoked plaintiff's permit for 1931.

On or about January 1, 1932, plaintiff received his application for a permit for 1932, similar to the one he had held in 1931 and for the years prior thereto as aforesaid, together with a letter, a copy of which is annexed to the bill of complaint, which stated: "This application is disapproved for the reason that permit I–9412 was revoked under date of December 23, 1931."

On the hearing before Hearer Jones, Robert Porter, Inspector, Treasury Department, Bureau of Industrial Alcohol, testified that in the course of his official duties, he had during the past few months investigated doctors and druggists in this district, and had interviewed Dr. Samuel Schwartz, of 1620

Ocean avenue, Brooklyn, N. Y., and that the doctor said that he had sold whisky prescriptions to the Meinwald Drug Store, 7302 Eighteenth avenue, Brooklyn, N. Y., and that the doctor gave an affidavit to that effect, which was offered and received in evidence, after the said inspector had testified that he had mailed a letter addressed to said doctor requesting him to appear and testify at the hearing, a copy of which letter was received in evidence.

The inspector also presented prescriptions issued by the said doctor and canceled in the plaintiff's pharmacy.

Inspector Porter also testified that he had interviewed Dr. Isaac Levine, of 1219 Forty-Ninth street, Brooklyn, N. Y., and that the doctor said that he had sold whisky prescriptions to the plaintiff, and that the doctor gave an affidavit to that effect, which was offered and received in evidence, after the said inspector had testified that he had mailed a letter addressed to said doctor, requesting him to appear and testify at the hearing, a copy of which letter was received in evidence.

Neither doctor was present at the hearing.

The inspector also presented prescriptions issued by the said doctor and canceled by plaintiff's pharmacy.

The prescriptions offered in evidence, issued by each of the said doctors and canceled at the plaintiff's pharmacy, were smooth and fresh and had no appearance of having been handled by individual patients. They bear no marks of having been folded or put in the patients' pockets.

The plaintiff testified as a witness in his own behalf that he never at any time disposed of any alcohol in any manner which was contrary to the regulations under the permit, and that he never sold any prescriptions, and never received any prescriptions which were sold, and on cross-examination, when asked what he had to say about Dr. Schwartz's statement that he sold him prescriptions, said he had nothing to say, he did not know about it; and when asked if he had anything to say about Dr. Isaac Levine's statement that he sold prescriptions, he said, "No sir."

If the affidavits of Dr. Schwartz and Dr. Levine were properly received in evidence, then there was sufficient legal evidence, if the hearer believed the affiants, to support the revocation.

The authority of this court in this action is limited to the determination of whether

upon the facts and law, the action of the commissioner is based on an error of law, or is wholly unsupported by the evidence, or clearly arbitrary or capricious. Ma-King Products Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046.

Under the provisions of section 9, title 2, of the National Prohibition Act (27 USCA § 21), there must be a hearing before revocation of a permit, which hearing must be predicated upon a citation containing specific charges of irregularity.

The character of the evidence which may be received at such a hearing is not defined nor restricted by the law.

■ Congress has failed to provide subpœna powers, and therefore the hearings are placed in the same category as other administrative hearings under other laws, in which, where the personal attendance of witnesses cannot be procured, secondary evidence may be received. John Bene & Sons v. Federal Trade Commission (C. C. A.) 299 F. 468, 471.

Under the power conferred by statute, section 511 of Joint Regulations 2 of the Treasury Department and Department of Justice was adopted, which provides as follows: "The evidence introduced at the revocation hearing on behalf either of the Government or the permittee may consist of affidavits, depositions, duly authenticated copies of records and documents, and oral testimony of witnesses. Affidavits should not be used if the personal attendance of the affiant as a witness is reasonably possible, and the hearing officer may require a showing that the personal attendance of the affiant is not reasonably available before admitting an affidavit in evidence. When the record is made to show that the personal attendance of the witness is not reasonably possible or such witness will not execute an affidavit or sign a written statement, the official report of the agent or inspector of the results of his investigation in that particular regard, identified by him as a witness at such hearing as having been made immediately following the investigation, may be introduced in evidence. Before closing a hearing the hearing officer shall definitely inquire of each party whether he has any further evidence to offer, which inquiry and the response thereto must be shown in the record."

Opinion of the Comptroller General of the United States, 4 Comptroller General's Opinions, 499, ruled November 29, 1924: "Answering the specific question presented, I have to advise that there appears to be no authority of law for the payment of expenses incident to securing the attendance of witnesses at hearings conducted by the Bureau of Internal Revenue for the purpose of determining whether permits issued under the national prohibition act should be revoked or reduced."

■ The proceedings before the hearer are informal, but it is fundamental that there be a hearing, and that the person whose permit is sought to be revoked should be confronted with an accusation, not of some one else's but of his own misdoing. W. H. Long & Co. v. Campbell (D. C.) 28 F.(2d) 422.

■ The affidavits were properly received in evidence. Ossam v. Moss (D. C.) 44 F.(2d) 845; Yudelson v. Andrews (C. C. A.) 25 F.(2d) 80, 83; U. S. ex rel. Smith v. Curran (C. C. A.) 12 F.(2d) 636, 637; Charles D. Kaier Co. v. Doran (D. C.) 42 F.(2d) 923; Doran v. Charles D. Kaier Co. (C. C. A. Third Circuit) 60 F.(2d) 259, dated February 29, 1932.

■ Against the affidavits of the doctors we have the mere denial of the plaintiff, and, in view of his cross-examination, not a very convincing one.

No motive is shown for falsehood on the part of the doctors; on the contrary, by their affidavits they admit the commission of a crime.

From all the evidence it would appear that the relations between the said doctors and the plaintiff were friendly.

Standing alone it might be said to be merely a suspicious circumstance, but taken in connection with the doctors' affidavits, the condition of the prescriptions themselves is strongly corroborative of the doctors' affidavits that they sold prescriptions to plaintiff, and the inference is plain that they were not delivered to or carried by patients, but were present at the pharmacy and used to account for the disposition of liquor, not for medicinal purposes, which the plaintiff had withdrawn under permit.

It is contrary to human experience and unbelievable that such a number of prescriptions, of such a size, should all be presented, smooth and fresh, and with no appearance of having been handled by individual patients.

Plaintiff's brief contains many citations in support of the contention that such a revocation must be based on evidence and not on mere suspicion.

With that contention I am in entire accord, and therefore need not refer to them specifically; but assuming that I am correct

in finding that the affidavits of the doctors were properly received in evidence, then they were not hearsay and there was sufficient evidence.

The second cause of action cannot survive a finding that the revocation of the 1931 permit was properly had, as by reason of that revocation the plaintiff should not, under the statute, receive a new or renewal permit for one year.

Plaintiff contends that the revocation proceedings were not commenced immediately after the department had notice of the claimed violation of the plaintiff, and cites Bay State Distributing Corporation v. Doran (D. C.) 33 F.(2d) 782; De Luca v. Stone (D. C.) 45 F.(2d) 846; Pennington v. Walter (C. C. A.) 29 F.(2d) 912; and apparently places its chief reliance on the last-cited case.

This is not the law in this circuit. Cucuzza v. Campbell (C. C. A.) 37 F.(2d) 31, 32, in which, referring to section 9, title 2, National Prohibition Act, the court said: "This provision was intended to place a duty of prompt action upon the Administrator. It was not intended to establish a limitation of which a permit holder might take advantage. Section 3, title 2, of the same act (27 USCA § 12) requires that all provisions of the act be liberally construed to the end that the use of intoxicating liquors as a beverage might be prevented. Congress intended by section 6, title 2, of the act (27 USCA § 16) that no permit shall be issued to any person who, within one year prior to his application therefor, has violated the terms of any permit issued to him under any law of the United States or of any state regulating traffic in liquor, and therefore it is unlikely that it was intended by section 9 to suffer a violator to hold a permit within this one year because the enforcing officer, either through inadvertence, carelessness, or deliberate wrong, failed to issue an order in time commencing revocation proceedings. An indefinite termination date in a permit would afford a dishonest or neglectful Administrator a delay in the initiation of revocation proceedings and give a right in perpetuity to continue an abuse of the permit privilege. * * * To act immediately within this provision necessarily means within a reasonable time. What is a reasonable time must depend upon the facts surrounding each particular charge. A period of investigation measured from August 18, 1927, to December 5, 1927, is not unreasonable, particularly in a district where the volume of enforcement work is great and where agents of necessity are assigned to a number of investigations during the period."

In the suit at bar the affidavits of the doctors were verified July 14, 1931, and July 31, 1931, respectively, and the citation was received November 9, 1931.

During all of this time large numbers of doctors and druggists were being investigated, and the investigation was not completed at the time of the hearing.

No information or suspicion had come to the department prior to the receipt of the doctors' affidavits, and the proceeding was commenced within a reasonable time.

A decree may be entered in favor of the defendants against the plaintiff, dismissing the bill of complaint on the merits, with costs.

Settle decree on notice.

Let the defendants submit proposed findings of fact and conclusions of law in accordance with this opinion, as provided by the rules of this court.